THE PRINCE MANUFACTURING COMPANY, Respondent, *v.* PRINCE'S METALLIC PAINT COMPANY, Appellant.

One who has adopted a trade-mark to identify his production, and by his labor and skill has created a valuable market therefor, and has induced public confidence in the superior quality of his goods, whether based on the skill used in their manufacture, or in the material from which they are made, or on both combined, is entitled, so long as he deals openly and honestly with the public, to be protected against those who, without right, attempt to appropriate his symbol and apply it to other goods of the same class.

The jurisdiction, however, of equity to restrain the infringement of a trade-mark is founded upon the right of property in the plaintiff and its fraudulent invasion by another, and is exerted to prevent fraud upon him and upon the public, and a party invoking its aid must himself be free from fraud.

Any material misrepresentation, therefore, in a label or trade-mark, as to the person by whom the article is manufactured, or as to the place where manufactured, or as to the materials composing it, or any other material false representation, deprives a party of the right to relief in equity, although the defendant's conduct is without justification.

A party who has secured the confidence of the public in an article manufactured by him and identified by a trade-mark, on the ground that it is made from one material, of which the trade-mark is a guaranty, cannot, without advising the public, substitute another material, although as good as the former, and sell that upon the credit of the true article, and justify the false use of the trade-mark or label on the ground of similar quality.

The owners of a tract of land, upon which was a mine of iron ore known as the "Prince Mine," began the manufacture from the ore obtained therefrom of a metallic paint, which was sold in packages with a label attached containing the words "Prince's Metallic Paint;" this was claimed as a trade-mark. Plaintiff, who claimed to have succeeded to the rights of the original proprietors, as well as its predecessors in the use of the label, represented and warranted the public in believing that the words meant paint made from the ore of said mine, and the credit the article had in the market was owing in part to the belief of the trade that said ore was, as claimed by the proprietors, superior to all other ore used in manufacturing paints. Plaintiff, having acquired title to other mines, applied the label indiscriminately to paint manufactured from their ores as well as to that of the original mine. In an action to restrain defendant from using said trade-mark, *held*, that when plaintiff offered for sale packages of paint with the label attached, it was an implied representation that the paint was the product of ore from the Prince mine, and this representation being untrue, it was not entitled to equitable relief; and this, although it appeared that the article so labeled was as good as that made from the ore of said mine.

*Leather Cloth Co.* v. *American Leather Cloth Co.* (11 Jur. [N. S.] 513); *Pidding* v. *How* (8 Sum. 477); *Perry* v. *Truefitt* (6 Bea. 66); *Partridge* v. *Menck* (1 How. Ct. App. Cas. 558); *Manhattan Medicine Co.* v. *Wood* (108 U. S. 218); *Palmer* v. *Harris* (60 Penn. St. 156); *Kenny* v. *Gillet* (70 Md. 574), distinguished.

Argued April 27, 1892; decided October 4, 1892.

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made July 23, 1891, which reversed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term and granted a new trial.

This action was brought to restrain defendant from using a certain label or trade-mark.

The facts, so far as material, are stated in the opinion.

*Joseph H. Choate* and *John Frankenheimer* for appellant. The reversal being upon the facts as well as the law, all the facts, and every question of fact and law, are before this court. And unless it appear that the findings of the trial court are against the weight of proof, the reversal of the judgment by the General Term cannot be sustained. (*Devlin* v. *G. S. Bank*, 125 N. Y. 756; *Aldridge* v. *Aldridge*, 120 id. 617; *Sherwood* v. *Hauser*, 94 id. 626; *Westerlo* v. *De Witt*, 36 id. 344.) Plaintiffs do not come into equity with clean hands, and, therefore, are not entitled to its protection. (*Cocks* v. *Chandler*, L. R. [11 Eq.] 446; *L. C. Co.* v. *A. L. C. Co.*, 11 H. L. 533; *Huwer* v. *Dannenhoffer*, 82 N. Y. 499; *Palmer* v. *Harris*, 60 Penn. St. 523; *M. M. Co.* v. *Wood*, 108 U. S. 218; *Fetridge* v. *Wells*, 4 Abb. Pr. 144; *Wolfe* v. *Burke*, 56 N. Y. 122; *Samuels* v. *Berger*, 24 Barb. 163; *Seabury* v. *Grosvenor*, 14 Blatchf. 262; *Koehler* v. *Sanders*, 122 N. Y. 65–76; *Romeyn* v. *Sickles*, 108 id. 650, 651; *Southwick* v. *F. N. Bank*, 84 id. 420; *Stevens* v. *Mayor, etc.*, Id. 296; *Vail* v. *L. I. R. R. Co.*, 106 id. 283; *Benedict* v. *S. A. R. R. Co.*, 51 Hun, 111; *Lockwood* v. *House*, 101 N. Y. 647.) If, as plaintiffs claim and the General Term has found, the trade-mark is a local one, designating the product of the so-called "Prince's Metallic Paint Works." and passed to the plaintiffs with the possession of these "works," then, by reason of their misuse of the trade-mark, plaintiffs have no standing in a court of equity. (*L. C. Co.* v. *A. L. Co.*, 11 H. L. Cas. 533; *Pepper* v. *Labrot*, 8 Fed. Rep. 29, 41; *Huwer* v. *Dannenhoffer*, 82 N. Y. 499; *Kidd* v. *Johnson*, 100 U. S. 617, 620.) If the trade-mark is not a local one, but a personal trade-mark, then plaintiffs have no standing in a court of equity, because, firstly, they have used the trade-mark without indicating in their use of it that they are or claim to be the transferees of the same from the original proprietor; secondly, they have

indulged in affirmative misrepresentation by using the words "Established 1858" in connection with the trade-mark, as indicating that the business carried on by them was established in 1858 and that they are in continuous succession to the same. (*Hazard* v. *Caswell*, 93 N. Y. 259; *Samuels* v. *Bergen*, 24 Barb. 163.) The plaintiffs' claim of title to the trade-mark, based upon the alleged possession of the so-called "Original Prince's Metallic Paint Works," is not valid. (*Kidd* v. *Johnson*, 100 U. S. 617; *Morgan* v. *Rogers*, 19 Fed. Rep. 596; *Hegeman* v. *Hegeman*, 8 Daly, 1; *D. C. Co.* v. *Guggenheim*, 2 Brews. 339.) The claim of title through the sheriff's sale of the trade-mark in gross to Charles Meendsen is without foundation in law. (*Hazard* v. *Caswell*, 93 N. Y. 259; *Kidd* v. *Johnson*, 100 U. S. 617; *Chadwick* v. *Corell*, 151 Mass. 190; *Hegeman* v. *Hegeman*, 8 Daly, 1; *Guest* v. *M. W. Co.*, 142 Penn. St. 610; *Flagg* v. *Farnsworth*, 16 Phila. 57; *Fox* v. *H. R. R. Co.*, 8 id. 639; *D. C. Co.* v. *Guggenheim*, 2 Brews. 339; *Morgan* v. *Rogers*, 19 Fed. Rep. 596; *Lockwood* v. *Bostwick*, 2 Daly, 521; *Weston* v. *Ketchum*, 7 J. & S. 54; *Colton* v. *Gillard*, 44 L. J. Ch. 90; Brown on Trade-Marks, § 362; Sebastian on Trade-Marks, 10.) Plaintiffs' claim to the trade-mark based upon the so-called tripartite agreement of January, 1880, is invalid. (Morawetz on Corp. [2d ed.] §§ 531, 537; *People's Bank* v. *St. Anthony's Church*, 109 N. Y. 522; *Fisher* v. *H. G. Co.*, 1 Pears. 118; *Munson* v. *S. R. R. Co.*, 103 N. Y. 58; *Abbot* v. *H. R. Co.*, 33 Barb. 578; *Patridge* v. *Badger*, 25 id. 146; *Copeland* v. *C. G. L. Co.*, 61 Barb. 60.; *Smith* v. *N. Y. S. Co.*, 18 Abb. Pr. 419; *Culver* v. *R. R. E. Co.*, 91 Penn. St. 387.) There was no ratification by the Prince's Metallic Paint Company of the tripartite agreement by reason of the proceedings which resulted in 1889 in a satisfaction of the judgment of David Prince, executor, against Bass. (Morawetz on Corp. §§ 581, 622; *Hayes* v. *Lycoming Ins. Co.*, 99 Penn. St. 626; *Rodemund* v. *Clark*, 46 N. Y. 384; *Moller* v. *Tuska*, 87 id. 166; *Morris* v. *Rexford*, 18 id. 552, 557; *Fowler* v. *B. S. Bank*, 113

id. 450; *Bach* v. *Tuch*, 126 id. 53.) Defendants stand in the shoes of the Prince's Metallic Paint Company of 1875, and are entitled to interpose whatever defense said company could have interposed against the validity of the alleged corporate transfer of the trade-mark to plaintiffs. (*Reifer* v. *Honesdale Co.*, 1 Penn. C. Ct. 64; *Flagg* v. *Farnsworth*, 16 Phila. 57; *Guest* v. *M. W. Co.*, 142 Penn. St. 610.) Plaintiffs cannot claim the trade-mark on the ground of user since 1879, and abandonment by Prince's Metallic Paint Company since that time, because, firstly, abandonment is not pleaded; secondly, even if pleaded, it is not proven; and thirdly, even if proven, it constitutes no ground for an exclusive right. (*Williams* v. *B. & A. R. R. Co.*, 17 Blatch. 21; *Menendez* v. *Holt*, 128 U. S. 514; *A. M. Co.* v. *Spear*, 2 Sandf. 599.) While the defendants' title to the trade-mark is not necessarily involved in this action, they have pleaded it as a defense in order to make it clear that their claim of title is well founded in law, and is not, as charged by plaintiffs, a flagrant act of piracy. (*Guest* v. *M. W. Co.*, 142 Penn. St. 610.) The action cannot be sustained as one to restrain unfair trade. No such cause of action was either alleged or proven. (*G. Co.* v. *G. R. Co.*, 128 U. S. 604; *Koehler* v. *Sanders*, 122 N. Y. 74; *B. D. Co.* v. *F. M. Co.*, 114 Mass. 69; *Clark* v. *Post*, 113 N. Y. 17.) The plaintiffs are in no event entitled to an injunction restraining the defendants from using their corporate name in the business of making and selling paint, because, first, the courts of this state have no jurisdiction to grant such an injunction in this action; and, secondly, even if the court has the power, the plaintiffs have not made a proper case for the exercise of such power. (*Bryan* v. *U. P. Co.*, 112 N. Y. 382, 388; *Ervin* v. *O. R. Co.*, 28 Hun, 269; *Galt* v. *P. S. Bank*, 18 Abb. [N. C.] 431; *Brooks* v. *M. C. Co.*, 17 J. & S. 234; *Adams* v. *P. Bank*, 35 Hun, 393; *Wheelock* v. *Lee*, 74 N. Y. 495; *Burckle* v. *Eckhardt*, 3 id. 132.) It was no error for the court to refuse to make the findings requested by the appellants, and the exceptions to such refusals are not well taken. (*Thompson* v. *Bank of B. N. A.*, 82 N. Y. 1;

*Andrews* v. *Raymond*, 58 id. 676; *Stewart* v. *Morse*, 79 id. 629; *James* v. *Cowing*, 82 id. 449, 458.)

*Frederic R. Coudert* and *John S. Davenport* for respondents. The judgment of the General Term being a reversal for errors both of fact and of law, and the appellants having refused a new trial if the record presents any error, either of law or fact, judgment absolute must be rendered for the respondents. (*Caswell* v. *Hazard*, 121 N. Y. 484; *Cobb* v. *Hatfield*, 46 id. 533.) The justice at the trial erred materially in supposing himself forbidden by the pleadings to consider anything else than the label or trade-mark as such. (*Springer* v. *Bier*, 128 N. Y. 99.) The right to use the designation "Prince" for the product of the Prince Metallic Paint Works, as it had been used by various owners for many years before, passed to the plaintiff with the possession of the works. (*A. M. Co.* v. *Robinson*, 25 Fed. Rep. 217; *Kidd* v. *Johnson*, 100 U. S. 617; *Pepper* v. *Labrot*, 8 Fed. Rep. 29; *Congress Springs Case*, 45 N. Y. 291.) The legal and equitable title of the plaintiffs to the label, as such, was fully proved, and should have been found in plaintiffs' favor. (*Ashur's Appeal*, 60 Penn. St. 290; *Lusk's Appeal*, 108 id. 152.) Plaintiffs' various muniments of title, even if defective, could be set aside only by action brought. (*L. M. Co.* v. *P. M. Co.*, 138 U. S. 537.) Defendants, being merely subsequent creditors, cannot be heard to avoid transfers thus acquiesced in and ratified by the old company, even if not originally regular in all respects. (*Graham* v. *R. R. Co.*, 102 U. S. 148; *French* v. *Shotwell*, 5 Johns. Ch. 555; *Ashur's Appeal*, 60 Penn. St. 290.) Acquiescence and ratification estop the old company and all claiming under them from questioning plaintiffs' right. (*Hoyt* v. *Thompson*, 19 N. Y. 207; *Sheldon Co.* v. *H. B. M. Co.*, 90 id. 607; *Jordan* v. *L. I. R. Co.*, 115 id. 380; *Dantziger* v. *Hoyt*, 120 id. 190; *Kent* v. *Q. M. Co.*, 78 id. 159.)

ANDREWS, J. It is undisputed that the title "Prince's Metallic Paint" was first applied in the year 1858 by Robert

Prince and Antoinette Prince, his wife, to paint manufactured by them from iron ore obtained from a tract of land comprising about forty-four acres, owned by Antoinette Prince, situated in Carbon county, Pennsylvania, and upon which the mill and kilns in which the paint was manufactured, were located. The product of the business was sold in packages, upon which a label was affixed, circular in form, and on the rim were printed the words " Prince's Metallic Paint." It is also undisputed that in 1871, after the death of the original proprietors, the title to the forty-four acres and to the business of manufacturing " Prince's Metallic Paint," together with the right to use the label or trade-mark was vested in one Bass, a son-in-law of Robert and Antoinette Prince, who in 1873, organized a company under the name of " Prince's Metallic Paint Company," to carry on the business of manufacturing paint upon the premises, and that Bass and the company organized by him continued the business primarily carried on by Robert and Antoinette Prince until 1875, when the company was organized as a corporation by the same name under a general law of Pennsylvania, in which was vested the title which Bass had held to the ore bed and premises, and to the business and trade-mark before referred to. The corporation conducted the business of manufacturing metallic paint on said land from ore obtained therefrom, and attached the label " Prince's Metallic Paint" to the product, and sold the same under that name until 1879, when the corporation became insolvent. The corporation had meanwhile erected a new and larger mill than the original one, and on land several miles distant therefrom, in which up to the time of the insolvency of the corporation it had manufactured its paint, using, however, exclusively, ore taken from the Prince tract.

In 1878 and 1879 all of the real property of the corporation, viz., the forty-four acres known as the Prince tract, and the land on which the new mill had been erected, was sold under foreclosure of mortgages thereon, and through several mesne conveyances title to one-half of the Prince tract and to the new mill, became in 1879 vested in the plaintiff, " The

Prince Manufacturing Company," also a Pennsylvania corporation organized in that year, and in which Abraham C. Prince and David Prince were and ever since have been the principal stockholders. The Prince Manufacturing Company immediately upon its organization, entered upon the business of manufacturing metallic paint from ore taken from the Prince tract and from other lands in Carbon county, leased by the corporation, and sold the product under the label " Prince's Metallic Paint," except that paint which was manufactured in the mill on one of the leased tracts, in which a brand of paint known as " Poco Metallic Paint" had been previously manufactured, was when customers desired and when orders were received therefor, branded by the plaintiff as " Poco Metallic Paint" instead of " Prince's Metallic Paint." The plaintiff continued to conduct the business and to use the " Prince " label (claiming the right so to do) without interference from 1879 to 1888, when certain creditors of the " Prince's Metallic Paint Company " of 1875, caused a sale to be made of the franchises of that corporation, upon execution under a statute of Pennsylvania, and became the purchasers and proceeded to reorganize the corporation under the original name pursuant to the authority given by the statute, and the defendant, the new corporation, claims to own the label or trade mark, " Prince's Metallic Paint," as successor of the corporation of 1875, and although it has not conducted the business of manufacturing paint, nevertheless permits Rutherford and Barclay, who are engaged in the business to affix the label to their packages. This new corporation is the defendant in this action.

The plaintiff and the defendant severally claim exclusive title to the label and the right to use it upon packages of metallic paint. Each claim title under the " Prince's Metallic Paint Company " of 1875. The plaintiff claims title from several and distinct sources : *First*, by reason of its ownership of the original mine and works of Robert and Antoinette Prince, derived under the foreclosure sales ; *second*, as transferee of the purchaser of the trade mark on a sale under an execution against

the " Prince's Metallic Paint Company," issued in 1879, under which the trade-mark was sold *eo nomine*, and which sale is claimed to have been authorized by a statute of Pennsylvania, *third*, under an agreement made between Bass, the president of the corporation of 1875, and subsequently ratified by the corporation.

The defendant denies the title of the plaintiff, and rests its right to the label and trade-mark exclusively upon the effect of the sale and purchase of the franchises of the corporation of 1875, made in 1888, before referred to, and the reorganization proceedings; the claim being that the trade-mark, with the right to manufacture " Prince's Metallic Paint," passed to the purchasers of the franchises as incident thereto, together with the right to reorganize the corporation under the original name.

The judgment dismissing the complaint, rendered at Special Term, was placed by the learned judge upon the failure of the plaintiff to establish any exclusive right to the use of the trade-mark or label upon its goods. The order of the General Term reversing the judgment of the Special Term, proceeded upon the contrary view of the question of title, and the court held that the evidence established the title claimed by the plaintiff. We feel compelled to concur in the judgment of the Special Term dismissing the complaint, on the ground that assuming that the plaintiff had the exclusive right to use the label " Prince's Metallic Paint," it has by its own conduct in the misuse of the trade-mark or label, forfeited any right to apply to the court for protection against its wrongful appropriation by others. This defense was set up in the defendant's answer.

Whatever contradiction may be found in the record as to other facts there is one which admits of no dispute, and that is that from 1858, the year in which the manufacture of metallic paint was established by Robert and Antoinette Prince, until the incorporation of the plaintiff in 1879, the label " Prince's Metallic Paint " had been exclusively applied, first by the originators of the article and, subsequently after their death,

by their successors in the business, to paint made from ore taken from the so-called original Prince tract of forty-four acres.

The label in its natural and primary signification indicates the nature of the article to which it is attached and also the producer. The words " Metallic Paint " standing alone could not be appropriated as a trade-mark, since they constitute the proper designation of the article by its appropriate name. But the word " Prince," indicating the manufacturer, identified the article to which the label was attached as that produced by him, and no person of a different name could stamp it upon a similar commodity. But the originators of the label, who seem also to have originated the manufacture of metallic paint from iron ore, began to claim that the superior quality of their product was owing to the peculiar quality and purity of the ore found in the mine on their tract of forty-four acres, from which the paint was manufactured, and that it produced a much better quality of paint than could be produced from ore taken from any other part of the same vein.

It was claimed by them that the paint manufactured by rival manufacturers from ore taken from other parts of the vein, known as Lawrence Metallic Paint, Poco Metallic Paint, and Lehigh Metallic Paint, was inferior in color and quality to the Prince's Metallic Paint by reason of the inferiority of the ore from which it was made. These claims were put forth to the trade and the evidence leaves no room to doubt that at the time of the incorporation of the plaintiff, in 1879, and its acquisition of the original Prince tract, the credit which the article " Prince's Metallic Paint " had acquired in the market, was owing in part to the belief of the trade that the ore from the Prince mine was superior to all other ore in Carbon county. The label or trade-mark came to have a broader meaning than it originally possessed, and when attached to packages of paint indicated not only that the paint was made by " Prince " or his successors in business, but also that it was made from ore taken from the original Prince mine, and this latter indication constituted an important element of the good will of

the business. That these facts were known to the plaintiff was established by the most satisfactory evidence.

The Prince Manufacturing Company (the plaintiff), in September, 1879 (the year it was organized), brought a suit in the Superior Court of the city of New York against Bass and others for an infringement of the trade-mark. In that suit, the plaintiff procured sworn declarations to be made that "Prince's Metallic Paint" could only be made from ore taken from the original Prince vein, and that it was so understood by the trade, and that the ore from that mine was superior to the ore from any other part of the vein. Abraham C. Prince, the president of the plaintiff, declared, among other things, under oath, "that there are in the neighborhood of Prince's Metallic Paint works several other paint factories whose products are known to the trade, but under distinct and separate designations, and that the designations of such products respectively denote to the trade their respective origin. And such paints are preferred and are in demand by the trade according to their locality of origin, as shown by their designations and are not equally esteemed simply because they come from the same general vein or deposit in the neighborhood." And further, "that the trade generally believe the paint manufactured from the ore of the original Prince's mine is superior, and in inquiring for paint with Prince's Metallic Paint label upon it understand paint so produced." In the affidavit of Robert Prince, used by the plaintiff in that suit, he said, " it has always been considered a matter of good faith that the ore for Prince's Metallic Paint should be taken from the original Prince ore bed and works, and I know of no case of its having been taken from any other." The verified complaint in the present action, commenced in 1888, makes the same claim. It alleges the ownership by the plaintiff of the " original Prince Metallic Paint works and mine;" that ever since the year 1858, the " said premises and mine " have been known as Prince's Metallic Paint Works; that the premises consisted and consist of mills for the manufacture of paint and of a " well-known mine or ore bed, which was

discovered by Robert Prince and from which a certain pecu-
liar earth or ore is obtained, which was the basis of the paint
known as Prince's Metallic Paint; that the trade-mark or label
was invented and arranged by Robert and Antoinette Prince;
that the paint distinguished by the label "Prince's Metallic
Paint" surpassed all other metallic paints and obtained special
favor with consumers, and brought a higher price; that the
business of Prince's Metallic Paint works has been conducted
continuously since 1858, and that said label or trade-mark
has been used exclusively "for designating the product of
said metallic paint works and the mines thereto belonging."
The tenth paragraph of the complaint declares "that by
reason of said use for about thirty years, the product of said
paint works and mine is known as Prince's Metallic Paint, and
Prince's Metallic Paint is understood to be said product, and
no other can be lawfully described as Prince's Metallic Paint."
The complaint also, after alleging the infringement by the
defendant, asserts that the article manufactured by the defend-
ant is spurious and fraudulent, and is manufactured elsewhere
than at Prince's Metallic Paint works, "and from earth not
obtained from said mine." These references to the complaint
sufficiently show that when this action was commenced, the
plaintiff understood that the name "Prince's Metallic Paint"
designated and was understood by the trade as distinguishing
metallic paint made from ore taken from the original Prince
tract of forty-four acres, and that no other could be lawfully
described as "Prince's Metallic Paint." This was the plain-
tiff's claim in 1879, in the suit against Bass and others, and it
was reasserted in unequivocal language in the complaint in
this action.

It was disclosed on the cross-examination of A. C. Prince
on the trial of the present action, that soon after the organiza-
tion of the plaintiff in 1879, it secured leases of lands in
Carbon county, containing the ore from which Lehigh Metallic
Paint, Poco Metallic Paint and Lawrence Metallic Paint had
been made, and the mills in which it had been manufactured,
and that the plaintiff commenced and has continued to use

ores taken from these leased lands in making " Prince's Metal-
lic Paint."    The other paints mentioned, up to 1879 had been
sold in competition with " Prince's Metallic Paint."    The wit-
ness Prince, when pressed for an explanation why the ores
from the leased mines were used in making " Prince's Metallic
Paint," which the plaintiff in the suit against Bass had declared
to be inferior, and how the application of the label to paint
manufactured from these ores could be justified in view of the
understanding of the trade that " Prince's Metallic Paint "
was made from ore taken from the Prince mine, at first stated
that at least twenty-five per cent of the ore from the Prince
mine was used with the other ores, and this gave the product
the requisite color and quality.    The witness finally admitted
that about one-half of the paint manufactured by the plain-
tiff, to which the label " Prince's Metallic Paint " was attached,
was manufactured wholly from ores taken from the leased
lands, but claimed that ore on some of these lands was of the
same character and as good as the ore from the original Prince
mine, and that the paint manufactured by the plaintiff from
such ores was of as good quality as the original paint known
as " Prince's Metallic Paint."    The plaintiff, as the witness
testified, used the ores from the leased lands because the
Prince tract did not supply sufficient ore for the plaintiff's
business.

The trial judge, among his findings of fact, found that ever
since 1879, down to the trial of the action, the plaintiff claimed
that the designation " Prince's Metallic Paint," and the label
and trade-mark in question, are property applicable only to
paint made from ore taken exclusively from the original
Prince mine, and that the trade, inquiring for paint with
Prince's metallic paint label upon it, understood paint so pro-
duced; that ever since 1879, the plaintiff has repre-
sented that the paint sold by it under that label was made
from ore taken from the original Prince mine, and these find-
ings are followed by a finding that about half the paint sold
by the plaintiff as Prince's Metallic Paint, under that label, is
made from ore taken from mines other than the original

Prince mine, and which are not situated upon the original Prince tract.

Upon the facts appearing in the record the plaintiff corporation is seeking to enjoin a fraudulent use by the defendant of a label which it itself is using in violation of its established meaning as a means of selling another product than that to which it could be rightfully applied. According to the definition put upon the label by its originators, as understood by the trade, asserted in the most solemn manner by the plaintiff in judicial proceedings, alleged in the complaint in this action and found by the trial court, the words "Prince's Metallic Paint" designated paint made exclusively from ore taken from the original Prince mine. The designation of the locality from which the ore was taken, implied in the use of the label, was a material circumstance because it was one of the essential grounds of the credit which Prince's Metallic Paint had acquired in the market and contributed to its sale. One-half of the paint sold by the plaintiff under that designation was in no sense the article described in the label. The label was an assurance to purchasers that the paint to which it was attached was made from the ore of the Prince mine, and was a guarantee that they were receiving paint so manufactured. By affixing the label to paint manufactured from other ores the plaintiff availed itself of the credit which pertained to paint manufactured from the Prince ore bed, to put upon the market paints manufactured from other ores, without so far as appears, disclosing the difference of origin. Purchasers were deceived and the plaintiff reaped the advantage of the deception.

The jurisdiction of equity to restrain the infringement of trade-marks is founded upon the right of property in the plaintiff and its fraudulent invasion by another, and is exerted to prevent fraud upon him and upon the public. A plaintiff who has adopted a trade-mark to identify his production, and by his labor and skill has created a valuable market therefor and has induced public confidence in the superior quality of his goods, whether based on the skill used in their manufac-

ture, or in the material form which they are made, or on both combined, is entitled, so long as he deals openly and honestly with the public, to be protected against those who, without right, attempt to appropriate his symbol to other goods of the same class. In protecting the owner of the trade-mark the public is also protected and deception is prevented. But as was said by Lord ROMILLY in *Cocks* v. *Chandler* (L. R. [11 Eq.] 446) : " The administration of equity is founded in perfect truth." The party who comes into a court of equity for relief against fraud must himself be free from fraud in the matter of which he complains, or, as is frequently said, he must come with " clean hands." The courts have in many cases applied this principle in bar of relief in cases of trade-marks. Any material misrepresentation in a label or trade-mark as to the person by whom the article is manufactured, or as to the place where manufactured, or as to the materials composing it, or any other material false representation, deprives a party of the right to relief in equity. The courts do not, in such cases, take into consideration the attitude of the defendant. Although the defendant's conduct is without justification, this, in the view of a court of equity, affords no reason for inter- ference. (See *Leather Co.* v. *American Leather Co.*, 11 Jur. [N. S.] 513 ; *Pidding* v. *How*, 8 Sum. 477 ; *Perry* v. *Truefitt*, 6 Beav. 66 ; *Partridge* v. *Menck*, 1 How. Ct. App. Cas. 558 ; *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218 ; *Palmer* v. *Harris*, 60 Pa. St. 156 ; *Kenny* v. *Gillet*, 70 Md. 574 ; Browne on Trade Marks, chap. 10, and cases cited.)

The present case differs from the cases referred to, in the fact that the misrepresentation in those cases was on the face of the label or trade-mark used, or in written or printed adver- tisements or circulars, while here the words " Prince's Metallic Paint " do not of themselves embody any representation as to the particular ore used in the manufacture, except as con- nected with the meaning attached to them by the trade. But this, we conceive, does not distinguish the cases in principle.

The plaintiff and its predecessors, in the use of the label, have by their conduct warranted the public in believing that

the words "Prince's Metallic Paint" mean metallic paint made by Prince or his successors from the ore of the Prince mine. When the plaintiff offered for sale packages of paint with the label attached, it was an implied representation that it was the product of ore from the Prince mine, and being untrue, the same consequences follow, we think, as though the representation was printed on the face of the label.

Nor is it any answer to this point that the article sold under the name of "Prince's Metallic Paint" was as good as that made from the ore of the original mine. A party cannot secure the confidence of the public in an article on the ground that it is made from one material, of which the trade-mark is a guaranty, and then without advising the public, substitute another material and sell that upon the credit of the true article, and justify the false use of the trade-mark or label on the ground of similar quality. If this was permitted, it would offer a temptation to fraud, and an inferior article might be palmed off on unsuspecting purchasers. And although the false article is as good as the true one, "the privilege of deceiving the public even for their own benefit is not a legitimate subject of commerce." (GARDNER, J., *Partridge* v. *Menck, supra;* see also *Phalon* v. *Wright,* 5 Phila. 464; *Kinny* v. *Gillette, supra;* Browne on Trade Marks, § 496.)

It is probable that the plaintiff has acted without any actual intent to defraud, but what it did upon the evidence and findings operated as a deceit upon the public, and this is sufficient to bar relief.

The attitude of the defendant does not commend itself to a court of equity. Even if its right to use the label was established, it is aiding outside manufacturers to sell their goods under the label of the corporation. But we place our judgment on the inequitable use of the label by the plaintiff.

The conclusion is that the order of the General Term should be reversed and the judgment of the Special Term affirmed. All concur.

Order reversed and judgment affirmed.