[Civ. No. 386. First Appellate District.—October 3, 1907.]

## CASTROVILLE CO-OPERATIVE CREAMERY COMPANY, Respondent, v. A. G. COL, Doing Business Under the Name of A. G. COL & CO., Appellant.

TRADEMARK FOR BUTTER—ACTION FOR INFRINGEMENT—FRAUDULENT USE BY PLAINTIFF.—A plaintiff seeking to restrain a defendant from the fraudulent use of plaintiff's trademark for butter must himself be free from the imputation of fraud in the use of the same, and where plaintiff has permitted others to make fraudulent use of its label on butter for the purpose of deceiving purchasers, prior to the filing of its trademark, it cannot maintain an action for its infringement.

ID.—AGENCY—WRONGFUL ACTS OF AGENT.—The plaintiff was bound by the acts of its manager in permitting the fraudulent use of the labels. A principal is bound by the acts of an agent committed in the transaction of the business of the agency, even if the acts are wrongful.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. Hiram D. Tuttle, Judge rendering judgment. J. R. Welch, Judge denying motion for new trial.

The facts are stated in the opinion of the court.

V. A. Scheller, and O'Neil & Richardson, for Appellant.

Dougherty & Dougherty, and W. A. Johnston, for Respondent.

KERRIGAN, J.—This is an action for the infringement of a trademark. The appeal is from a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial.

Among other things the court found that for more than six years respondent had been engaged in the manufacture and sale of a superior quality of butter at Castroville, California, sold in wrappers bearing a certain label. That respondent had built up a good trade for the butter sold in wrappers bearing this label, and that on February 1, 1904, it caused said label to be registered as a trademark, pursuant to section 3197 of the Political Code. That at all the times mentioned in the complaint the appellant was engaged in selling in the city of San Jose butter of a quality inferior to that of respondent, and that appellant, with the fraudulent intent to mislead the public into purchasing his butter as the butter of respondent, grossly imitated the latter's trademark.

The court further found: "That an officer of plaintiff, to wit, the 'Manager' thereof, prior to the said registration of its trademark with the Secretary of State of California, permitted the use of its butter wrappers on butter other than its own by its customer in San Jose, California, during a time of year when butter was scarce, but that said permission and use were unauthorized by the board of directors of said

corporation, and said permission was revoked, and said use forbidden by said manager, prior to the filing of plaintiff's said trademark.''

The last finding is based on testimony substantially as follows: L. Griffin, the manager of the respondent, called on its behalf, said: ''About three-quarters of the output of respondent's creamery is shipped to Mr. Renzel at San Jose, who sells it there. He sells the butter, and accounts to us for a certain price that we make to him. During the past seven years there have been consignments of wrappers to Renzel so that he could wrap butter not respondent's in respondent's wrappers, and sell it as Castroville butter. This was done each year to the extent of ten or fifteen boxes, and during certain seasons when butter was scarce. Castroville butter is sold for five or ten cents a square higher than other butter. We knew that the purchaser was getting something that he did not bargain for, and permitted that to go on under the designation of Castroville Creamery. Our reputation was partly acquired under these conditions. The understanding was that Renzel should wrap only first-class butter. We suffered this to be done up to the time of the trademark. This we stopped because we heard of appellant's wrapping it. I cannot say that the board of directors knew that we were shipping wrappers to Renzel. I guess they did not. The company never authorized me to do it. At the time we got the trademark I notified Renzel not to use any more of the wrappers.''

William Horstman, called on behalf of appellant, said: ''I worked for Renzel at San Jose for about six months prior to September, 1903. During that time Renzel got quite a little butter from the Castroville Creamery part of the time, and some of the time he did not get hardly any. During the time I wrapped I think there was a good deal more wrapped than what came from Castroville. They wrapped more than they got in all the time that I was there, I think. This was subsequently marketed as Castroville butter, and a good deal of it was sold in the City of San Jose.''

The respondent has come into a court of equity complaining of the fraudulent methods of appellant, while respondent each year from the inception of its business down to within a short time of the commencement of this action had itself

been guilty of deceiving the public. The rule is well settled that the party claiming protection against the fraudulent conduct of another must himself be free from the imputation of fraud. (*Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218, [2 Sup. Ct. Rep. 436]; *Joseph* v. *Macowsky,* 96 Cal. 518, [31 Pac. 914]; *Prince Mfg. Co.* v. *Price Metallic Co.,* 135 N. Y. 38, 39, [31 N. E. 990]; Paul on Trademarks, sec. 315; Hesseltine on the Law of Trademarks and Unfair Trade, p. 118.)

In *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218, [2 Sup. Ct. Rep. 436], Mr. Justice Field said (quoting from the opinion of Chief Justice Duer in *Fetridge* v. *Wells,* 4 Abb. Pr. (N. Y.) 144): "Those who come into a court of equity, seeking equity, must come with clean hands and a pure conscience. If they claim relief against the fraud of others, they must themselves be free from the imputation. If the sales made by the plaintiff and his firm are effected, or sought to be, by misrepresentation and falsehood, they cannot be listened to when they complain that, by fraudulent rivalry of others, their own fraudulent profits are diminished."

In *Prince Mfg. Co.* v. *Price's Metallic Co.,* 135 N. Y. 38, 39, [31 N. E. 990], it is said: "Any material misrepresentation in a label or trademark as to the person by whom the article is manufactured, or as to the place where manufactured, or as to the materials composing it, or any other material false representation, deprives a party of the right to relief in equity. . . . And although the false article is as good as the true one, 'the privilege of deceiving the public, even for his own benefit, is not a legitimate subject of commerce.'"

The respondent, about fifty-one days before this action was begun, learned that appellant was imitating its label, and realizing the weakness of its position, revoked the permission to practice the deception. The cessation came too late. In *Seabury* v. *Grosvenor,* 14 Blatchf. (U. S.) 262, 21 Fed. Cas. (No. 12,576), p. 908, a plaintiff had fraudulently advertised "capcine" as a vegetable principle of great value, when in truth there was no such substance. Before bringing suit, however, plaintiffs had omitted the fraudulent and deceptive language from their circulars. But the court says this does not help the plaintiffs. In the opinion in that case it is said: "Although they may have omitted the fraudulent, de-

ceptive and untrue language from their circulars before this suit was commenced, yet if they have any property in the trademark which they claim title to, they have acquired such property by the use, for a considerable time, of such language in the circulars which accompanied the articles they sold, and in respect to which the trademark is claimed."

There is no merit in the point urged by respondent that the permission given by Griffin to Renzel was unauthorized. According to well-established rules of law, the principal is bound by the acts of its agent committed in the transaction of the business of the agency, even if the acts are wrongful. (Civ. Code, secs. 2330, 2338; *Stockton etc. Works* v. *Glen's Falls Ins. Co.*, 98 Cal. 557, 577, [33 Pac. 633] ; *Bank of California* v. *Western Union Tel. Co.*, 52 Cal. 280.)

The judgment and order appealed from are reversed.

Cooper, P. J., and Hall, J., concurred.