NEW YORK AND NEW JERSEY LUBRICANT COMPANY

*v.*

O. W. YOUNG, a corporation, &c.

[Decided August 8th, 1910.]

1. The adjective "nonfluid" and the noun "oil," when used in their proper sense, cannot be exclusively appropriated as a trade-mark since they are merely descriptive.

2. Any material misrepresentation in a label or trade-mark as to the person by whom the article is manufactured, as to the place where manufactured, or as to the material composing it, or any other material false representation, deprives a person of equitable relief when such trade-mark is infringed, although the act of the infringer was without justification, and although the false article was as good as the true one.

3. The general rule that one cannot invoke the aid of equity when his trade-mark is infringed, if such trade-mark is intended to defraud the public, is of universal application, and cannot be confined to particular classes of cases.

4. Where a party sold what was in fact a grease under the trade-mark of "nonfluid oil," it was a material misrepresentation to the public, such as would prevent equitable relief in case of an infringement of such trade-mark.

5. Regardless of whether certain advertisements were only occasionally put forth misrepresenting to the public that certain grease was "nonfluid oil," they were sufficient to show an intent to mislead the public by adopting such trade-mark.

6. Though in a suit for infringement of a trade-mark complainant was denied relief because its trade-mark was a fraud on the public, yet where respondent was guilty of a similar fraud costs were denied to it.

*Mr. Edward M. Colie,* for the complainant.

*Mr. Chandler W. Riker,* for the defendant.

STEVENS, V. C.

This is a bill to enjoin the defendant corporation from selling or offering for sale, their lubricating compositions or greases under the name of "Nonfluid oil."

The bill charges that immediately after its incorporation, in 1896, the complainant began the business of manufacturing and selling lubricants, and that for the purpose of identifying certain lubricating compositions, originated and manufactured by it from similar wares sold by others, on or about March 29th, 1900, it adopted and made use of, and since then has continued to make use of, a certain distinguishing mark or trade name, to wit, the words "Nonfluid oil," and that it has affixed the same as a label upon its boxes, packages and cans ever since the date named. The evidence sustains this allegation.

The answer denies that the defendant has counterfeited, copied or colorably imitated any trade-mark or name of complainant, in violation of complainant's rights, or that in the manner of placing its name and the name of its goods upon its boxes, it has counterfeited, copied or imitated the manner of placing the name of the complainant upon complainant's goods or boxes. The evidence does not sustain this averment. In the case of some, at least, of defendant's cans and packages there is undoubtedly a design to imitate the make-up of complainant's cans and packages. The principle controversy, however, hinges upon the use by defendant of the words "Nonfluid oil." As to this, defendant says that the name was employed as a descriptive designation of the goods which it manufactured and sold; that the words composing it are words in general use in the English language, having a definite and well established meaning, and that as such they may be used by anyone who manufactures and sells goods of which the words are properly descriptive. This insistment would, no doubt, be sound if the lubricant that both parties make be, in fact, an oil. The undisputed evidence, however, shows that neither party manufactures an oil, properly so called. What they do

put out is a grease. The two substances are so dissimilar that complainant founds his case upon the admitted difference. Were it not for the dissimilarity, it is conceded that complainant would have no exclusive right, for the reason that neither the descriptive adjective "nonfluid," nor the noun "oil," are capable of exclusive appropriation by any single manufacturer, if used in their proper sense.

The complainant in his bill charges that the term "Nonfluid oil" is an arbitrary, fanciful and distinguishing name or trade-mark, applied by it to lubricating compositions for the first time. It does not tell us, however, wherein it is arbitrary or fanciful. It does not allege that its "lubricating compositions" are really greases and not oils, and that, as applied to these compositions, the name is arbitrary and fanciful and therefore capable of appropriation by the first user. In order to make out its case it had to show this by proof. Standing by themselves, the words do not appear to be either arbitrary or fanciful. They apply to a well-known article of commerce, some of whose varieties are, at ordinary temperatures, solid. Nonfluid, as applied to them, is purely descriptive. On its appearing that complainant's lubricants were greases, defendant took the ground that the term in its application to such greases was a falsehood calculated to deceive the public, upon which complainant could base no right, even as against defendant, guilty of the same falsehood.

This brings us to the point of the case. Can the complainant have an injunction to protect its use of a label that tells this untruth?

The law has been settled by courts of the highest authority. In *Worden* v. *California Fig Syrup Co., 187 U. S. 516,* the supreme court of the United States, speaking by Mr. Justice Shiras, thus stated it: "When the owner of a trade-mark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not in his trade-mark, or in his advertisements and business, be himself guilty of any false or misleading representation; that if the plaintiff makes any material false statement in connection with the property he seeks to protect, he loses his right to claim the assistance of a

court of equity; that where any symbol or label claimed as a trade-mark is so constructed or worded as to make or contain a distinct assertion which is false, no property can be claimed on it, or, in other words, the right to the exclusive use of it cannot be maintained."

In *Prince Manufacturing Co.* v. *Prince's Metallic Paint Co., 135 N. Y. 24,* Mr. Justice Andrews said: "Any material misrepresentation in a label or trade-mark as to the person by whom the article is manufactured, as to the place where manufactured, *or as to the materials composing it,* or any other material false representation deprives a party of the right to relief in equity. The courts do not, in such cases, take into consideration the attitude of the defendant, although the defendant's conduct is without justification. This, in the view of a court of equity, affords no reason for interference. * * * And although the false article is as good as the true one, the privilege of deceiving the public even for their own benefit is not a legitimate subject of commerce."

And Lord Westbury, in *Leather Cloth Co.* v. *American Leather Cloth Co., 4 De G. J. & S. 137,* said: "When the owner of a trade-mark applies for an injunction to restrain defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not, in his trade-mark or in the business connected with it, be himself guilty of any false or misleading representation; for if he makes any material false statement in connection with the property he seeks to protect, he loses and very justly, his right to claim the assistance of a court of equity." The statement of the law, by Lord Westbury, was approved on appeal by the house of lords. *11 H. L. Cas. 523.*

I have cited these passages for the purpose of showing that the rule as laid down by courts of the highest authority is of universal application. It is not, either in terms or because of its declared reason, confined to particular classes of cases. The classification suggested by counsel finds no support in the above utterances or in any case to which he has referred me.

There is no such limitation as counsel suggests, to be found in the language of our own decisions, so far as they have dealt

with the subject. In *Johnson & Johnson* v. *Seabury & Johnson, 71 N. J. Eq. (1 Buch.) 750*, Mr. Justice Swayze thus expresses himself: "There is no question about the principle that a false representation in a trade-mark will prevent equitable relief for its protection. The cases cited by defendant are, with one exception, cases where the false representation was contained in the trade-mark itself. In such a case it is quite impossible to determine to what extent good will, for which protection is sought, has been created by the false assertion and to afford protection to a trade-mark containing a false representation would perpetuate the falsehood by the decree of the court." To the same effect is *Bear Lithia Springs Co.* v. *Great Bear Spring Co., 71 N. J. Eq. (1 Buch.) 596*. It is manifest that a limitation such as counsel contends for ought not to exist. . The court should be free to deny its aid to every attempt to mislead the public, as to the real character of the thing to be sold.

Counsel, arguing further, deduces the following proposition from the decided cases: "Where an article is marketed under a title which is unusual, self-contradictory, incongruous or for any reason such that the public would not normally take the title in its literal sense, no fraud on the public is committed." This statement would have, perhaps, to be qualified by what Lord Westbury said in the case above cited: "I cannot receive it as a rule that a plaintiff is not answerable for a falsehood because it may be so gross or palpable as that no one is likely to be deceived by it. If there be a willful false statement, I shall not stop to inquire whether it be too gross to mislead."

And it would moreover be subject to the proviso that what was "unusual, contradictory and incongruous," was not also deceptive in a material particular.

The trade names, cited by counsel, that have been upheld, have not in themselves been calculated to mislead. No sensible person would imagine that "grape nuts," as applied to a cereal (*Postum Cereal Co.* v. *American, &c., 109 Fed. Rep. 898*), "swan down," as applied to a complexion powder (*Tetlow* v. *Tappan, 85 Fed. Rep. 774*), "tuberose," as applied to tobacco (*Lorillard* v. *Pepper, 86 Fed. Rep. 956*), "cough cherries," as applied to a confection (*Stoughton* v. *Woodard, 39 Fed. Rep.*

*902*), "elastic," as applied to wooden book cases (*Globe Wernicke Co.* v. *Brown, 121 Fed. Rep. 185*), were anything but fancy names. In *Societe Anonyme* v. *Western Distillery Co., 43 Fed. Rep. 416*, the decision was expressly based upon the ground that a label which contained the Latin and French words there passed upon were susceptible of a sensible meaning consistent with the truth and so of the other cases cited by counsel.

On the other hand, *Ginter* v. *Kinney Tobacco Co., 12 Fed. Rep. 782*, is a good illustration of the rule in its application to the case in hand. Complainant sought protection for his "straight cut" cigarette. It appeared that the words "straight cut" had a perfectly definite meaning in the trade. They meant that the plant had been so cut and treated as to preserve the fibres long, even, straight and parallel. The defendant was, like the plaintiff, selling a cigarette under the name "straight cut." In point of fact neither was using "straight cut" tobacco. Mr. Justice Wallace said: "Complainant now insists that the term was selected and has been used by his predecessors and himself as an arbitrary designation of the particular article and that neither his cigarette nor the defendant's are made of straight cut tobacco. All this, if true, does not help the complainant's case, but furnishes an additional reason why he should be denied the assistance of a court of equity. Not only has he employed a name to which he could not acquire an exclusive use, but he has used it in a manner calculated to mislead the public, although perhaps not intentionally on his part."

Counsel says that the term "Nonfluid oil" is incongruous bizarre, novel, and, in its popular acceptation, a contradiction in terms. Being such, he argues that it can be exclusively appropriated. But in view of the admitted fact that some oils are solid, it does not, on its face, appear to deserve the epithets applied to it. It would have been novel when solid oils were first discovered, but it is not so now. Taking nothing but the words, the label informs the intending purchaser that what he is buying is an oil and that that oil is solid. Some of complainant's lubricants are solid and some of them are liquid. If they

are liquid, and the purchaser is informed that they are, either by something on the label or in some other way, it is possible to maintain that the words, so applied, are non-descriptive, and therefore fanciful and capable of appropriation, just as, for example, "liquid ice" might be, or as "hole proof," as applied to stockings, has been adjudged to be. *172 Fed. Rep. 860.*

But the material misrepresentation in this case is, under the evidence, to be found in the word "oil." Complainant's product in its liquid form greatly resembles oil and would, by the majority of persons, be mistaken for oil, if complainant so described it. Now complainant knew that it was a grease and that it would be so mistaken, and it knew, too, that at the time it adopted it, its competitors were calling their very similar product "grease." What was its object in misdescribing it, if not deception? By the name alone, complainant was representing to the public that it was furnishing a superior article, an oil for automobile and other lubrication, while its competitors were only able to sell a grease. But it did not stop at the name. It advertised the product, and this is what some of the advertisements say:

"Nonfluid oils are not greases as some have supposed. They are fine mineral oils, so treated as to become partially solidified."

"Nonfluid oils represent a distinct advance over fluid oils *and greases* for automobile lubrication. Being nonfluid they do not spatter and drip to waste like fluid oils. * * * Being oils they do not have to be softened by frictional heat, &c. Caution. Inspired by our success others are offering tallow greases in imitation of nonfluid oils under similar names."

"We presume it is on this account that certain grease makers, for example, one in Newark, New Jersey, and another in Baltimore, Maryland, have taken advantage of a technical loophole in the trade-mark law to offer for sale ordinary greases which they boldly label 'Nonfluid oil.'"

It is said in extenuation of the false assertions contained in these extracts that they were only occasionally put forth. Are they any the less material misrepresentations on that account, or do they indicate any the less clearly the purpose of adopting the label?

It would seem plain, therefore, that complainant should be denied relief. Inasmuch as defendant has been guilty of a similar misrepresentation, the *Leather Cloth Company Case, supra,* is a precedent for denying it costs.