# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 6, 1920.

 see—136 Md. 539.

CORKRAN, HILL & COMPANY, INCORPORATED, A BODY CORPORATE.

VS.

THE A. H. KUHLEMAN COMPANY, A BODY CORPORATE.

*Bartlett, Poe & Claggett* for plaintiff.
*George A. Finch* for defendant.

DAWKINS, J.—

It has been difficult in this case to reconcile the actions of the parties in the case with what would seem to be their rights under the law.

The plaintiff and its predecessors in business for over fifty years have used a brand or trade mark, known as "Orange Brand," consisting of an orange and orange leaves in conjunction with the words "Orange Brand." The first registration of the brand or trade mark seems to have been in May, 1908, for "Hams and Bacon." The right was thereby obtained to use the trade mark "by placing thereon" (on the packages) "a printed label on which the trade mark is shown." This trade mark was not then used for oleomargarine. There was an agreement entered into in 1910 between the defendant and the plaintiff to make oleomargarine (defendant was already making the article), and have it bear the name "Orange Brand." No formula was prescribed, but of the particular grade practically the whole output of the defendant's establishment was put out as manufactured by the Kuhleman Company, and the plaintiff was named as distributor. The agreement was changed again about

1916 from which time large quantities of the article were sold to the trade mostly through the plaintiff as distributor and the defendant as manufacturers. Other brands were used. In a few cases the defendant sold oleomargarine in Orange Brand packages to customers directly with the knowledge of the plaintiff. Goods made by the defendant were sold under other brands ("Nutlet," "Goldex," etc.), some of them by the plaintiff as distributor.

The cartons used as containers for the oleomargarine bear words showing copyright by one or the other of the parties and the number of the defendant's establishment or something to indicate that the goods were manufactured and handled by both of the parties to this case. Whatever the cause, a split came between the parties and this bill seeks to enjoin the defendant from using the trade mark "Orange Brand" and the cartons containing thereon the trade mark "Orange Brand" and the words "Prepared for Corkran, Hill and Company, Incorporated, Baltimore, Md."

It is also sought to make the defendant account for the profits arising from the sales under the aforementioned trade mark or in the cartons named.

The defendant contends that the plaintiff not handling oleomargarine in any way and desiring to handle it entered into an arrangement with the defendant to supply oleomargarine, at first not naming either distributor or manufacturer, but only the establishment (Kuhleman's place).

About 1913 relations between the parties became strained, and at this and at a subsequent period the plaintiff seems not to have used the brand (although other brands were sold by it), at least for a time.

In 1916 the agreement between the parties to have the defendant supply the plaintiff with "Orange Brand" is admitted. It is also contended that other brands prepared by the defendant were handled in the same way by the parties. Certain raw materials were furnished by the plaintiff to the defendant. It is not clear just what the arrangement between the parties was, nor does it appear just how the agreement of 1916 could be legally terminated.

The defendant did sell with the knowledge of the plaintiff some goods directly to customers. The defendant says that the enormous sale of the "Orange Brand" goods was due to the high quality of the goods as manufactured by the defendant and on account of its extensive advertising and distribution of signs, etc. The defendant had registered a trade mark for "Orange Brand" in 1917 of which registration, of course, the plaintiff claims to have had no knowledge. No special raw material was sold by the plaintiff to the defendant for making "Orange Brand," it is claimed by the defendant.

I have stated the main contentions of the respective parties somewhat fully to show the difficulty of recognizing and establishing of an apparent legal right when such right has been disturbed by the act of the parties.

There could be but little doubt but that the plaintiff originated "Orange Brand" for certain kinds of goods. They seem to have used it in connection with oleomargarine only through the defendant. They at times practically discontinued its use. The brand seems not to have meant anything apart from Kuhleman's goods. In effect the two together were making and putting a superior brand of goods on the market. In all the years of the use and development of this brand of oleomargarine the Kuhleman name was a more conspicuous factor in the sale than Corkran, Hill & Company, Incorporated, which is clearly recognized by the letter of February 5, 1917, from Mr. Piel of the plaintiff corporation to the defendant's agent (who seems to have been a more or less useful friend to both parties), in which Mr. Piel suggests these words for a sign: "Have you tried The A. H. Kuhleman Company's Orange Brand Oleomargarine. Corkran, Hill & Company, selling agents," etc.

A sign was adopted as follows: "Ask for Kuhleman's Orange Brand. Corkran, Hill & Company, Distributors."

Whether this was meant as a "surprise" or not for Kuhleman it was authorized and would have been extensively used save for the war, upon the coming of which all parties thought the defendant's name on account of its German sound would hurt the business. This same friend of both parties whilst making the sales was through a

good part of 1917 procuring a trade mark registration for the defendant, with no apparent intention of changing the relationship existing between the parties. Certainly if the plaintiff was the owner, acquiescence of the kind cited would oust it from the exclusive use so far as this defendant is concerned. Acquiescence is tantamount to an agreement to use. Matthews case, 17 Fed. Rep. 760.

Acquiescence of this character can not be taken away over night under circumstances such as are disclosed in this case. Nims, 701 etc.

The enormous sales seem to be largely due to the character of the goods made by Kuhleman. There was an effort to get the formula for defendant's goods. Advertising Kuhleman's "Orange Brand" must to have meant more than merely pasting those two words on the carton. If the words meant what they said, surely the public had learned to know what "Orange Brand" meant, consequently it would be deceived if some other goods were sold to it instead of Kuhleman's. If for about a period of nine years the names have become inseparable with this article, certainly such a misrepresentation would be effected as would hardly justify the court interfering.

92 Pacific Rep. 648; Partlett, 67 Md. 542, and other cases.

A court of equity ought not to interfere by injunction to restrain the use of a trade mark when the testimony in regard to the right to use it is conflicting and contradictory, so that it is no easy matter to determine on which side the weight of evidence is. 44 Md. 303, Witthaus vs. Braun.

If the public has learned to know "Orange Brand" as Kuhleman's, to put out goods other than theirs when there is no recognized formula, would be a misrepresentation. No injunction will lie. 61 Md. 276, Siegert vs. Abbott.

Cases cited by plaintiff's counsel do not seem in conflict with the principle just stated. I do not believe that there has been shown any general abandonment further than an acquiescence in the use by the defendant.

I do not think that this case presents the situation suggested by plaintiff's counsel, that no trade mark owner can change manufacturers. I think he can, but here from practically the beginning the goods were held out to the public

as Kuhleman's special make. The public would be deceived now to buy anything else as "Orange Brand" which should not be sanctioned. 128 U. S. 520, Hope.

It would seem to be clear that the plaintiff first owned and used the trade mark in question by virtue of its registration of it for "Hams and Bacon."

They intended later to extend it to oleomargarine. They may not have intended to abandon its use at any time. They did use it for a number of years in connection with the defendant. They apparently acquiesced in its use by the defendant.

The decisions of the question of cancellation of the trade mark registration of the defendant should go a long way to determine the ultimate rights of the parties to the case as to the use of "Orange Brand." I need not discuss testimony as to the manner and purpose of the procuring of this registration, further than to say that I can not accept the testimony as conclusive.

Upon the facts now before me I am prepared to sign an order dissolving the injunction and dismissing the bill.