CARLOS D. SIEGERT and others *vs.* CORNELIUS W. ABBOTT and CORNELIUS F. ABBOTT. CORNELIUS W. ABBOTT *vs.* CARLOS D. SIEGERT and others.

*Injunction—Trade-mark—Misrepresentations.*

A Court of equity will not interpose by injunction to protect a claim to a trade-mark or label where either contains a misrepresentation.

The complainants claiming to be the manufacturers and exclusive proprietors of certain cordial or aromatic bitters, popularly known as "Angostura Bitters;" and claiming as its trade-mark this designation, sought to enjoin the defendants who were engaged in the manufacture of an article styled "Angostura Aromatic Bitters," from manufacturing or selling any preparation or article under the name of "Angostura Bitters," and from imitating the complainants' labels in which the bottles containing their bitters were wrapped. The label of the complainants used when their bill was filed, stated that the bitters is prepared by Dr. S.—that it was prepared at Angostura, but is now prepared at Port of Spain. Dr. S. died some years before the bill was filed by his successors in the business, and he never lived at Port of Spain. The label also stated that the bottles bore the signature of the complainants, when in fact they bore the signature of the original inventor. HELD:

That the complainants in consequence of the misrepresentations contained in their label, were not entitled to relief against the defendants.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, IRVING, and BRYAN, J.

*Samuel Wagner*, and *John M. Carter*, for Siegert and others.

The fact that the respondents have avoided an exact imitation of the complainants' label will not relieve them. The Courts have had much more frequent occasion to deal with this class of cases, than with those where the bolder plan was resorted to of an exact imitation. *Amoskeag Manufacturing Co. vs. Spear,* 2 *Sandford S. C.,* 599; *Burnett vs. Phalon,* 5 *Abb. Pr., N. S.,* 212; *Newman vs. Alvord,* 51 *N. Y.,* 189-193, and *Coleman vs. Crump,* 70 *N. Y.,* 573-8. In the last case it was held that "It is not necessary that the symbol, figure or device used or printed and sold for use should be a *fac simile* or precise copy of the original trade-mark, or so close an imitation that the two cannot be distinguished except by an expert, or upon a critical examination by one familiar with the genuine mark. If the false is only colorably different from the true; if the resemblance is such as to deceive a purchaser of ordinary caution; or if it is calculated to deceive the careless and unwary, and thus to injure the sale of the goods of the proprietor of the trade-mark, the injured party is entitled to relief."

The same rule has been recognized by this Court in *Robertson vs. Berry,* 50 *Md.,* 591. See also *Meriden Britannia Co. vs. Parker,* 39 *Conn.,* 460; *Lawrence Manufacturing Co. vs. Lowell Hosiery Mills,* 129 *Mass.* 328; *Filley vs. Fassitt,* 44 *Missouri,* 178; *Barrow vs. Knight,* 6 *R. I.,* 434-8.

In the Federal Courts also, the rule has been adopted. *McLean vs. Fleming,* 96 *U. S.,* 245. See also *Walton vs. Crowley,* 3 *Blatch. C. C.,* 440-7; *Gorham Co. vs. White,* 14 *Wall.,* 511-527; *Hostetter vs. Adams,* 13 *Reporter,* 454. The recent English cases are to the same effect: *Seixo vs. Provezende,* 12 *Jurist, N. S.,* 217; *Wotherspoon vs. Currie,* 27 *L. T. R., N. S.,* 393; *Orr vs. Johnston,* 40 *L. T., N. S.,* 307, 311-313; *Taylor vs. Taylor,* 23 *L. J. Ch.,* 255; *Siegert vs. Findlater,* 26 *Weekly Reporter,* 461. Fraudulent intention is not necessary to constitute an infringe-

ment. *Stonebraker vs. Stonebraker,* 33 *Md.,* 267-8; *Millington vs. Fox,* 3 *My. & Cr.,* 338, 352; *Collins Co. vs. Walker,* 7 *W. R.,* 222; *Clement vs. Maddick,* 33 *L. T.,* 117; *Amoskeag Co. vs. Spear,* 2 *Sand. S. C.,* 599-608; *Coleman vs. Crump,* 70 *N. Y.,* 573-8; *McLean vs. Fleming,* 96 *U. S.,* 245–253; *Filley vs. Fassitt,* 44 *Mo.,* 178. Nor is it necessary to show actual deception. *Filley vs. Fassitt, supra; Abbott vs. Bakers' Assn., W. N.,* 1872, *page* 31, (*Cox's Manual,* 213, 214;) *Edelston vs. Edelston,* 1 *DeG. J. & S.,* 185, (*Cox's Manual,* 118.)

But our Courts have gone farther than this, and have held that not only is an actual imitation unnecessary to constitute an infringement, but that the adoption by another, with intent to deceive the public, of certain peculiar characteristics of the package, label or wrapper by which a manufacturer's goods had become known and recognized, amounts also to an infringement. This principle was established in *Frese vs. Bachof,* (reported in 13 *U. S. Pat. Gazette,* 635, and in *Cox's Manual, page* 346;) and the same point has been decided in the State Courts in *Williams vs. Johnson,* (2 *Bos. N. Y.,* 1, *Cox's Manual, page* 85,) and in *Morgan's Sons Co. vs. Troxell,* (*Cox's Manual, page* 415.)

*Henry Stockbridge,* and *George Hawkins Williams,* for C. W. and C. F. Abbott.

Dr. J. G. B. Siegert never had any valid right, title or claim to the name "Angostura Bitters" as a trade-mark.

In order to acquire or to have that right, Dr. Siegert must have been the first to appropriate that name, must have used it invariably in a lawful business, with truth and in good faith, have stamped, attached, or in some way applied it uniformly to his merchandise, and have been the only one who could rightfully, and with truth, so apply it.

This proposition is sustained by all the authorities. A trade-mark is a " technical commercial emblem," " nothing

more nor less than one's commercial signature to his goods," and the right to it is perfected "only when the owner stamps the symbol upon an article of merchandise which he desires to sell." *Browne on Trade-marks, secs.* 127–130, also, *sec.* 143; *Shaw Stocking Co. vs. Mack,* 12 *Fed. Rep.* 707, *and note* 717.

"A proprietor can have but one trade-mark; that must have a practical existence—not resting in the mind of the owner alone—but be stamped, impressed or attached in some way to the article itself." *Candee, et al. vs. Deere, et al.,* 54 *Ill.,* 439.

The doctrine, as enunciated by the Supreme Court of the United States, is, "that no one can apply the name of a district of country to an article of commerce, and obtain thereby such an exclusive right to the application as to prevent others from truthfully using the same designation," and it adopts, as its own, the language of the Supreme Court of New York, that "no one has a right to appropriate a sign or symbol, which, from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose." It therefore refused to enjoin the use of the term "Lackawanna" as applied to an article of merchandise. *Canal Company vs. Clark,* 13 *Wall.,* 311, 324, 327.

The Supreme Court of Pennsylvania hold the same doctrine, refusing to recognize a right to the exclusive use of the term "Glendon" as a trade-mark. *Glendon Iron Company vs. Uhler,* 75 *Penn. St. Rep.,* 467.

The principle, contended for by the complainants, that a mere geographical name can be exclusively appropriated as a trade-mark, finds no sanction in the cases cited to sustain it. They only hold that the use may be good as against a wrong-doer, who attempts, by fraudulent means, to divert custom from its legitimate channel. This is shown wherever Courts have occasion to discuss some

unguarded expressions dropped in such cases as those of *Newman vs. Alvord; McAndrews vs. Bassett,* and *Seixo vs. Provezende; Canal Co. vs. Clarke,* 13 *Wall.,* 325; *Browne on Trade-marks, secs.* 182, 184.

The fact, therefore, if it be a fact, that Dr. Siegert made bitters in the town of Angostura, gives him no monopoly of that town or its name as against one who can use it truthfully. He has no patent or exclusive right to compound ingredients and give them that name, and, if it rightfully belongs to the compound, restrain any one else who produces the same compound from giving it the same name. Any body else, anywhere in the world, has a right to make the same article, and to sell it under the same name. Again; if the name be used to indicate the origin of the merchandise, any person producing merchandise having the same origin has a right so to indicate in its name. The first user could only claim it as against those who would seek to deceive the public by its use.

In this case, there is no evidence of any wish or intention to practice any deception upon any one. The answer avers, and the evidence fully sustains it, that the name used by the defendants was applied to the goods made by them before they had any knowledge that there was any article in the public market, or known to the public, bearing the name of "Angostura Bitters," or any person in existence bearing the name of "Siegert."

"Angostura bark" was an article that had been known to the medical profession and to the pharmacopœia as a valuable bitter and tonic for three-quarters of a century at least. That medicinal simple, the defendant, or those under whom he holds, had a right to use; and if they so used it that it was the leading characteristic of the article manufactured therefrom, they had a right to give it its true name, derived from, or descriptive of, its composition and properties. See *Encyclopedia Britannica,* 9th *Ed., Art. Angostura; Osgood vs. Allen,* 6 *Am. L. Times,* 20; *Cheavin*

*vs. Walker, L. R.,* 5 *Ch. Div.,* 862–3; *Raggett vs. Findlater, L. R.,* 17 *Eq. Cas.,* 29.

Neither Dr. Siegert nor the plaintiffs could any more monopolize the use of the name "Angostura," as against any one manufacturing a medicine in any one of the numerous towns bearing that name, or as against any person, anywhere in the world, making a bitters with *Angostura bark* as its leading ingredient, and truly naming it accordingly, than the canal company could monopolize the name "Lackawanna," or the Glendon Iron Company could monopolize the name "Glendon."

"A generic name, or a name that truly describes the article that he makes or sells, every one has a right to attach to the goods that he places upon the market." *Thompson vs. Winchester,* 19 *Pick. Rep.,* 214; *Manufacturing Co. vs. Trainer,* 11 *Otto,* 101 *U. S.,* 54; 58 *N. Y.,* 234.

But not only had Dr. Siegert no right to monopolize the use of the word "Angostura" as applied to bitters, he never attempted to do so. He never claimed a right to do so. He never called his bitters "Angostura Bitters" at all. During all the time of his making of bitters he always called his article "Aromatic Bitters," and never "Angostura Bitters."

But if Dr. Siegert had a right to the exclusive use of the name "Angostura Bitters," and it had "devolved" upon the complainants, still the label, or wrapper, which they seek to have protected, bristles all over with misrepresentations—is itself a palpable fraud—and forfeits any and all right that they might otherwise have to relief from a Court of equity.

This label or wrapper, in which the name "Angostura Bitters" was for the first time used by any of the Siegert race, and which they now seek to have a Court of equity protect, was adopted by them in the year 1875—after they had removed from the place that had once borne the name

Angostura, and ceased to have any connection with it,—twenty-nine years after there ceased (as they allege) to be any such place as Angostura, and five years after the death of Dr. Siegert. And yet in every wrapper used by them since that time, they announce, in all the languages, that figure on it, that it is "Aromatic Bitters, or Angostura Bitters, *prepared by Dr. Siegert,*" &c. They nowhere say or suggest, or hint that the skill and care and experience with which the original discoverer of the article compounded it, are no longer used in its manufacture, but it is made by entirely different persons. Their doing so would be the exact truth, but it would advertise the public that the skill and care in which they confided in Dr. Siegert is no longer employed in the manufacture of the goods, and so they conceal that fact from the public, endeavor to extend their trade by falsely asserting that what they offer to sell was "prepared by Dr. Siegert," and then ask a Court of equity to sustain them in so doing. *Partridge vs. Menck,* 1 *How. App. Cases,* 558 ; *Browne on Trade-marks,* sec. 490 ; *Fetridge vs. Wells,* 13 *How. Pr. Rep.,* 385 ; *Hobbs vs. Francais,* 10 *How. Pr. Rep.,* 567 ; *Hennessy vs. Wheeler,* 69 *N. Y.,* 271 ; and see *Connell vs. Reed,* 128 *Mass.,* 477 ; *Leather Cloth Co. vs. American Leather Cloth Co.,* 4 *DeG., J. & S.,* 143, 144, 148, and 11 *H. L. Cases,* 523; *Phalon vs. Wright,* 5 *Phila.,* 464 ; *Palmer vs. Harris,* 60 *Pa. St.* 156; *Ginter vs. Kinney Tobacco Co.,* 12 *Fed. Rep.,* 782; *Witthaus vs. Mattfeldt,* 44 *Md.,* 303 ; *Sherwood vs. Andrews,* 5 *Am. Law Reg.,* (*N. S.,*) 589 ; *Manhattan Medicine Co. vs. Wood, et al.,* 108 *U. S. Rep.,* 218.

Neither Dr. Siegert, nor the complainants, who claim to have a title under him, were the first to use the term "Angostura Bitters," and consequently neither he nor they acquired any right by priority of user. Dr. Siegert never called the article made by him "Angostura Bitters." During all his life he called it " Aromatic Bitters," and labeled it with that name, advertising it as prepared by him-

self at "Angostura." For five years after his death these complainants labeled their article in the same way, and specifically claimed the name "Aromatic Bitters" as their trade-mark, and even prosecuted a competitor in the trade in 1874, for infringing their trade-mark by using the name "Aromatic Bitters." *Siegert vs. Ehlers, Cox's Manual of Trade-mark Cases,* 243.

IRVING, J., delivered the opinion of the Court.

The bill in this case was filed by Carlos D. Siegert and others to prevent, by injunction, Cornelius W. Abbott and Cornelius F. Abbott from imitating the complainants' trade-mark and labels, in which they wrapped the bottles of their bitters popularly called "Angostura Bitters," by putting up a compound represented to have similar properties and virtues, in labels so much like those of the complainants, as to be a palpable simulation of them, by which the public was likely to be, and was, deceived into buying the defendants' preparation as and for that of the complainants. The bill also prayed for an account of profits from the sales made by the defendants in that way. The Circuit Court enjoined one of the defendants, Cornelius W. Abbott, and his agents and employés, and forbade him and them to use the labels described in the proof as used by them ; but the bill was dismissed as to Cornelius F. Abbott, and no account of profits was decreed. The complainants appealed because Cornelius F. Abbott was not *eo nomine* enjoined, and also because an accounting was not decreed. The defendant, Cornelius W. Abbott appealed because any relief was granted.

A motion has been made to dismiss the complainants' appeal, on the alleged ground, that they have estopped themselves from prosecuting the same, by taking proceedings, after decree granting partial relief and awarding them costs, to enforce the payment of the costs. The whole case being open for review on the appeal of the de-

fendant in the suit, and, on careful consideration being of opinion that there was error in the decree, and that the bill ought to have been dismissed, we have found the motion unimportant, and have not considered the legal question it raises.

It is a general rule of law, in cases of this kind, that Courts of equity will not interfere by injunction where there is any lack of truth in the plaintiff's case; that is, where there is any misrepresentation in his trade-mark or labels. *Browne on Trade-marks, sec. 71, and sec. 474, et seq.* The respondents invoke the application of this rule to the complainants' case, as made, which they contend contains a misrepresentation on the face of the label at its very beginning. The heading of the label, as used when the bill was filed, is in three different languages, but the translation of the Spanish and German is the same as the English, which reads "Aromatic Bitters, or Angostura Bitters, prepared by Dr. Siegert, at Angostura, now Port of Spain, Trindad." Here is, certainly, a statement that the article is prepared by Dr. Siegert; that it was prepared at Angostura, but is now prepared at Port of Spain.

It is a conceded fact that Dr. Siegert died in 1870. The bill so charges. He never lived at Port of Spain. The complainants, his sons and successors in business, removed to Port of Spain several years after his death. One of the complainants was associated with Dr. Siegert in the business as his partner, and alleges that, as survivor, he succeeded to the business; and subsequently he associated his brothers, the other complainants, with him as partners in the trade.

A late case in the Supreme Court of the United States, (*Manhattan Medicine Co. vs. Wood*, 108 *U. S.*, 218,) decided in April, 1883, since the decision of the learned Court from which this appeal was taken, seems to be conclusive against the right of the complainants to the relief asked. There the complainants sold a medicine, put up in glass

bottles with panel shaped sides, on five of which, in raised letters, the words "Atwood's Genuine Physical Jaundice Bitters, Georgetown, Mass." are blown in the glass. Twenty-five years ago the medicine was manufactured by Moses Atwood in Georgetown, Massachusetts, and was sold by his agents throughout the United States. The complainant in the suit was a corporation under the laws of New York, to which, by successive mesne assignments, the sole right to use the receipt and manufacture the compound had passed; and that right was being exercised in New York City, when a bill was filed against one *Wood* for using their trade-mark and labels, or simulating them, for a medicine manufactured by *Wood* in Portland, Maine. The Court says, that Dr. Atwood sold his "Atwood's Vegetable Jaundice Bitters" with this designation, that it was manufactured by him. "As the medicine was tried and proved to be useful, it was sought for under that designation, and that purchasers might not be misled, it was always accompanied with a label showing by whom and at what place it was prepared. These statements were deemed important in promoting the use of the article and its sale, or they would not have been continued by the assignees of the original inventor. And yet they could not be used with any honest purpose when both statements had ceased to be true. It is not honest to state that a medicine is manufactured by Moses Atwood, of Georgetown, Massachusetts, when it is manufactured by the Manhattan Medicine Company in the City of New York." The Court further says: "The object of the trade-mark being to indicate, by its meaning or association, the origin or ownership of the article, it would seem that when a right to its use is transferred to others, either by act of the original manufacturer or by operation of law, the fact of the transfer should be stated in connection with its use; otherwise a deception would be practised upon the public and the very fraud accomplished, to prevent which Courts of

·equity interfere to protect the exclusive right of the original manufacturer." Because of these untruthful statements the Supreme Court held that the complainants were not entitled to the aid of a Court of equity, and relief was denied. Numerous cases were cited by the Court in support of the law as laid down by them, among which are *The Leather Cloth Company vs. The American Leather Cloth Company*, 4 *DeG., J. & S.*, 137, and 11 *Clark H. L., ·Cases*, 523 ; *Pidding vs. How*, 8 *Sim.*, 477, *and Perry vs. Truefitt*, 6 *Beav.*, 66.

A more exactly analogous case can hardly be imagined. It is true a removal from "Angostura" or "Ciudad Bolivar" to "Port of Spain," is noted in the label ; but it is so noted as to leave the impression that Dr. Siegert, the inventor and original manufacturer, had so removed and was continuing his manufacture at "Port of Spain." Although Dr. Siegert died in 1870, and a new firm was compounding the bitters at a place where he never did live and compound them, when the simulation by defendants was begun and committed, no intimation is to be found in the label that he is dead, and that complainants as his legal successors are conducting the business under his name and signature, a *fac simile* of whose signature is preserved on the label. It should be remarked, that in the note of warning against counterfeits, at the left hand of the label, it is stated the bottles bear the complainants' signature, which inspection shows to be not theirs, but the original inventors. We are unable to distinguish this case from the Manhattan Medicine Company case, from the ·opinion in which we have quoted, and which we think it proper to follow in a case of this nature, in the absence of a statute of the State controlling the subject. The complainants have relied on *Siegert vs. Findlater*, 26 *Weekly Reporter*, 459, wherein the present complainants after the death of their father, were awarded injunction by Justice FRY in England. The same point respecting misrepresen-

tation seems to have been made in that case, and to have been made in the pleading ; but just how it was pleaded does not appear.   The learned Judge however, overrules the objection, but his reasoning is most unsatisfactory.  We do not see how the misrepresentation of the fact that Dr. Siegert is personally compounding these bitters is announced and explained by the statement  that he has removed to Port of Spain in the  Island of Trinidad.   The point is treated, in that case, as  if the  misrepresentation was solely of the place of manufacture, which, in fact, is the most harmless part of the  misrepresentation.   Upon that question we cannot regard the *Findlater* decision as of sufficient authority to control the case as now presented to us.   In  the case of *Robertson vs.  Berry & Co.*, 50 *Md.*, 591, wherein the property right of a publisher to the title and name of his work, is recognized in analogy to the law of trade-marks, and relief was granted against imitation, the point, on which we dispose of this case, did  not arise, and the case is distinguishable from this.   This decision therefore is not intended to depart from any of the  principles therein established.

For the reasons we have assigned, the decree in this cause must be reversed and the bill of complaint must be dismissed.

*Decree reversed, and  bill dismissed.*
(Decided 7th February, 1884.)