[No. 14595.   Department One. — November 30, 1892.]

NATHAN JOSEPH, APPELLANT, *v.* J. MACOWSKY, RESPONDENT.

TRADE-MARKS — INJUNCTION — FALSE REPRESENTATION BY PLAINTIFF — FRAUD UPON PUBLIC. — A person coming into a court of equity for an injunction to restrain the use of a trade-mark must come with clean hands and without any lack of truth in his own case, and cannot enjoin a defendant from using a trade-mark which he himself is not, in equity or good conscience, entitled to use, and which contains a false representation calculated to deceive the public as to the manufacturer of the article and the place where it is manufactured.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Wheaton, Kalloch & Kierce,* for Appellant.

The fictitious name of the manufacturer is not fraudulent. (Lindley on Partnership, 181; Parsons on Partnership, 266; Civ. Code, sec. 2466; Browne on Trade-marks, 494; *Stewart* v. *Smithson,* 1 Hilt. 119; *Lauferty* v. *Wheeler,* 63 How. Pr. 488.) Exaggerated statements in advertisements do not disentitle the owner of a trade-mark to have it protected. (*Curtis* v. *Bryan,* 36 How. Pr. 33; Coddington's Digest of Trade-marks, secs. 535, 537, 539, 541, 545, 553, 554, 556, 558, 560–562, 565; Browne on Trade-marks, sec. 492; *Hogg* v. *Kirby,* 8 Ves. 215; *Holloway* v. *Holloway,* 13 Beav. 209; Browne on Trade-marks, ed. 1885, p. 80.)

*Manuel Eyre,* for Respondent.

The plaintiff is not entitled to any relief in equity, because of his false representations. (*Leather Cloth Co.* v. *American Leather Cloth Co.,* 11 H. L. Cas. 542; *Ford* v. *Foster,* 7 Ch. App. 611; *Siegert* v. *Abbott,* 61 Md. 276; 48 Am. Rep. 101; *Palmer* v. *Harris,* 60 Pa. St. 156; 100 Am. Dec. 557; *Fetridge* v. *Wells,* 13 How. Pr. 385; *Hobbs* v. *Francais,* 19 How. Pr. 571; *Connell* v. *Reed,* 128 Mass.

477; 35 Am. Rep. 397; *Manhattan Medicine Co.* v. *Hood,* 108 U. S. 218.)

PATERSON, J.— This action was brought to restrain the defendant from making or selling any razor having a stamp thereon, or upon the case thereof, showing the words "Queen's Own," or the words "Queen's Own Co."

The plaintiff alleged that he had been for many years importing razors, which he had caused to be manufactured in England; and in order that said razors might become known in the market and easily identified, and their origin known, he had caused each one of them to be stamped upon the "tang," which is the thick part of the razor blade back of the cutting part, with the words, "Queen's Own Co." He alleged that on account of said trade-mark the razors had become known in the commercial world as the "Queen's Own" razors, and had acquired great reputation with the public for excellence of quality; that the defendant had been selling razors which were marked in conspicuous letters upon the blade thereof, "Queen's Own"; and that the imitations were calculated to deceive those desiring to purchase plaintiff's razors. The court found that all of the razors offered for sale by the plaintiff have stamped upon the shank on one side the words "Queen's Own Co., Sheffield"; that in point of fact the razors are not manufactured by any company or firm known by the name or designation of "Queen's Own Co.," nor manufactured in Sheffield, England; that the defendant has not sold any razor which, by a stamp or general appearance, was designed or calculated to mislead the public as an imitation of the plaintiff's razors; that "there was a total dissimilarity between them, and apparent to any person upon even the slightest inspection."

The only question raised on this appeal is as to the sufficiency of the evidence to support these findings of the court.

We cannot say that the findings are not supported by the evidence. It is true, the plaintiff, in his direct

examination, testified that the razors were manufactured in Sheffield; but in his cross-examination he admitted that he did not buy them through a Sheffield house; he said he knew they were manufactured in Sheffield only because he purchased them from Harrison Brothers and Houston, all of whose goods were manufactured in Sheffield. He admitted that there was no company in England or in this country known as the "Queen's Own Co.," and that he alone constituted the "Queen's Own Co." T. S. Conran, a dealer in cutlery, testified, on behalf of the defendant, that plaintiff told him he purchased the razors from Harrison Brothers and Houston, but did not know who made them. He testified, also, that said firm did not manufacture razors. The credibility of these witnesses was a matter for the court below to consider and determine, and we have no right to interfere with its decision.

Assuming the facts found to be correct, as we must, the plaintiff is seeking to enjoin the defendant from using a trade-mark which he himself is not, in equity or good conscience, entitled to use, because it is a fraud upon the public. The evident purpose of the defendant's stamp upon the razor and his advertisement and label, as the court below said, were " to cause the purchasing public to believe that these razors are manufactured by a firm known as the ' Queen's Own Co.,' and in Sheffield, England," when in point of fact he did not know where they were manufactured, nor by whom. The positive assertion of a thing not known to be true is as reprehensible as the assertion of a thing which is known to be untrue. Assuming, therefore, that the defendant did make and sell razors precisely like those sold by the plaintiff, the latter cannot complain. The plaintiff's purpose in endeavoring to make the public believe that his razors were manufactured in Sheffield is manifest. He testified that "English cutlery is better than German. . . . . In no part of the world is the manufacture equal to the English. Not even American goods." Cutlery manufactured in Sheffield has a wide reputation for excellence.

A person who comes into a court of equity for an injunction in a case of this kind must come with clean hands; he cannot be granted relief upon a claim to the exclusive use of a trade-mark which contains a false representation, calculated to deceive the public as to the manufacturer of the article and the place where it is manufactured. (Browne on Trade-marks, secs. 71, 474; *Palmer* v. *Harris,* 60 Pa. St. 156; 100 Am. Dec. 557; *Fetridge* v. *Wells,* 13 How. Pr. 385; *Hobbs* v. *Francais,* 19 How. Pr. 571; *Manhattan Medicine Co.* v. *Hood,* 108 U. S. 218.) In *Seigert* v. *Abbott,* 61 Md. 284, 48 Am. Rep. 101, the court said: " It is a general rule of law, in cases of this kind, that courts of equity will not interfere by injunction, where there is any lack of truth in the plaintiff's case; that is, where there is any misrepresentation in his trade-mark or labels."

In view of what has been said, we deem it unnecessary to consider the question whether the defendant's razors were so formed or stamped as to lead the public to believe they were of the same kind as those sold by the plaintiff. We have preferred to rest our decision upon a ground which will tend to discourage the use of false and misleading trade-marks and labels.

The judgment and order are affirmed.

GAROUTTE, J., and HARRISON, J., concurred.