## MILLBRAE CO. v. TAYLOR et al.

### No. 15,039; June 27, 1894.

#### 37 Pac. 235.

**Trade Name—Injunction.—Defendant, the Owner of Land Known as "Millbrae Station,"** formed a copartnership with plaintiffs to keep cows on said land, and sell the milk therefrom under the trade name of "Millbrae Dairy." Afterward the partnership was dissolved, plaintiffs taking the milk routes and business of selling milk, and defendant, who remained the owner of the land, agreeing to supply them with milk therefrom. Later plaintiffs terminated the contract with defendant, and took no more of his milk, but still conducted a milk business under the name of the "Millbrae Dairy," and formed a corporation under the name of the "Millbrae Company," to carry on the business. Held, that plaintiffs could not ask for an injunction to restrain defendant from using the name "Millbrae" in a competing business, since their own use of the name was a fraud on the public.

APPEAL from Superior Court, City and County of San Francisco; Wm. T. Wallace, Judge.

Action by the Millbrae Company against H. H. Taylor and others to enjoin the use of a trade name and for damages. Judgment for defendants. Plaintiff appeals. Affirmed.

Wheaton, Kalloch & Kierce for appellant; Maxwell & Mc-Enerney for respondents.

HAYNES, C.—Action to enjoin the defendants from using a "trade name," which it is alleged belongs to the plaintiff (a corporation), and for damages. Findings and judgment were against the plaintiff, and this appeal is taken from the judgment and an order denying its motion for a new trial. An outline of the facts, condensed from the findings, may be thus stated: Some time prior to 1865, the defendant D. O. Mills became and still is the owner of a tract of land in San Mateo county, at the railroad station now, and ever since 1865, known as Millbrae station. From 1865 until August, 1883, A. F. Green and defendant Mills were copartners, engaged in the business of raising and keeping cows of superior quality and breed upon said land, and selling the milk therefrom in the city of San Francisco, said business being conducted, at least since 1875, under the trade name of "Millbrae Dairy"; the word "Millbrae" being compounded of the name of the owner of the ranch (omitting the "s") and the Scotch word "brae." In August, 1883, F. H. Green purchased a one-third interest in the cows and other personal property and business, and the firm as thus constituted continued the business until September 1, 1886, under the same trade name. At the date last named the copartnership was dissolved by mutual consent and in the settlement A. F. and F. H. Green took the milk routes and business of selling the milk in San Francisco, with the wagons, horses and appurtenances, and defendant Mills, who was at all times the sole owner of the land, took all the dairy implements, supplies, cows and other personal property at the ranch, and on the same day entered into an agreement with said A. F. and F. H. Green whereby he agreed to sell to them and they agreed to buy, not less than two hundred and seventy nor more than three hundred and ninety gallons of milk per day, at a price therein specified, the milk to be thus furnished by defendant Mills to be exclusively from his own dairy, and this agreement was to continue for at least one year.

A similar agreement was made each year, the last being dated September 1, 1889, the quantity named therein being not less than three hundred and sixty and not exceeding four hundred and ten gallons per day. This contract stipulated that it should be in force for at least one year, and thereafter until one of the parties should give the other three months' notice of his intention to terminate it. About July 1, 1890, A. F. and F. H. Green organized a corporation under the name of the Millbrae Company (the plaintiff herein), and conveyed to it their said business, property and goodwill, they being the principal stockholders therein, and practically owning and carrying on said business through said corporation, and on the 1st of August, 1890, ceased to take milk from defendant Mills under said contract, and thereafter the plaintiff procured from Marin county the milk with which it supplied its customers. Until the formation of the corporation, the business continued to be conducted by A. F. and F. H. Green under the name of the "Millbrae Dairy," and their delivery wagons were so marked, and that name was printed upon their bills and receipts, upon which it was also stated that the milk was "produced on Millbrae farm, San Mateo county." After the organization of the corporation, the name on the wagons and bills was changed to "Millbrae Company," and on the bills it was stated simply "pure country milk, produced from rich pasture, wholesome feed, healthy cows"; without any indication as to the locality except the word "country." On September 1, 1890, the defendant D. O. Mills commenced the business of selling milk from his said dairy in the city of San Francisco, and engaged defendant Taylor as agent for that purpose, and employed defendant Cole to manage the sale and distribution of the milk in the city; and in this business adopted and used upon his wagons and upon his bills the original trade name, "Millbrae Dairy," but specified upon his bills and advertisements that the milk sold was from the Millbrae dairy, in San Mateo county, and added: "Do not confound it with the Millbrae Company." At the time of the dissolution of the copartnership, a valuation was put upon all the property, and among other items of the city branch of the business, which was taken by A. F. and F. H. Green, was "100 cans' trade, $4,000."

The foregoing facts are not disputed, and are sufficient to present the principal question in the case. There are several specifications of the insufficiency of the evidence to justify certain findings, but these can be more briefly disposed of after deciding the principal question, since if the findings excepted to were framed as appellant suggests they would not change the result. It is insisted by appellant that the "trade name" is a part of the goodwill sold by defendant Mills to Green & Green, and for which they paid a large sum of money; that such name is an important element in such goodwill, and that plaintiff has the exclusive right to its use. Appellant is in error as to the facts to which he applies the law, and hence is wrong as to his conclusions. The findings upon this subject are not only supported, but are made clear, by the testimony of F. H. Green, who was one of the parties to the contract under which it is claimed the goodwill of the business and the right to use the trade name was sold by defendant Mills. He said: "Prior to that time [referring to his purchase of an interest in 1883] the business had been carried on by D. O. Mills and my father, under the name of the 'Millbrae Dairy.' I think they gave it the name of the Millbrae dairy in 1875 or 1876. In 1883 the business was in the name of the Millbrae dairy. I continued in business with them some three years. In 1886 we entered into an agreement to divide the business up. Mr. Mills took the interest in the country, and my father and myself took the interest here. Since that time my father and myself conducted the business under the name of the Millbrae dairy." It will also be observed that on the day of the dissolution of the partnership the contract was entered into for the sale by Mills to the Greens of the milk produced at Millbrae, and by which the Greens agreed to sell the same in San Francisco, and that defendant Mills has ever since continued the business of keeping cows and producing milk at the same place and under the same name. There was nothing said in the contract about the sale or transfer of the goodwill, or of the use of the name under which the business had been conducted. It was not a sale of the entire business with which the name was connected, but a "division" of the business, and the name was equally applicable and equally important to each part. So long as the Greens or their successors continued to sell Mill-

brae milk, there was no conflict of interest in the use of the name, nor was there any agreement, covenant, or obligation that the Greens should have the right to use it longer than they continued to sell Millbrae milk. On the contrary, the fair and reasonable implication was that the name should only be used in connection with the sale of milk produced by the owner of the ranch and dairy familiarly known by that name, and which name was even more important to be retained by the owner of the ranch than by one whose right to sell the milk depended upon a yearly contract. Nor was this contract terminated by defendant Mills, but plaintiff, for its own advantage, voluntarily terminated it by a three-months' notice, under the terms of the contract, and now insists that it may deprive defendant Mills of all use and benefit of the well-established name in disposing of his milk, while using the false name of "Millbrae" for selling the milk of a competing producer.

It is not necessary to review the cases cited by appellant, for the question involved is no longer an open one. In the case of Joseph v. Macowsky, 96 Cal. 521, 19 L. R. A. 53, 31 Pac. 914, it was said: "A person who comes into a court of equity for an injunction in a case of this kind must come with clean hands. He cannot be granted relief upon a claim to the exclusive use of a trademark which contains a false representation, calculated to deceive the public as to the manufacturer of the article and the place where it is manufactured: Browne on Trademarks, secs. 71, 474; Palmer v. Harris, 60 Pa. 156, 100 Am. Dec. 557; Fetridge v. Wells, 13 How. Pr. (N. Y.) 385; Hobbs v. Francais, 19 How. Pr. (N. Y.) 571; Manhattan Medicine Co. v. Wood, 108 U. S. 218, 27 L. Ed. 706, 2 Sup. Ct. Rep. 436. In Siegert v. Abbott, 61 Md. 284, 48 Am. Rep. 101, the court said: 'It is a general rule of law in cases of this kind that courts of equity will not interfere by injunction where there is any lack of truth in the plaintiff's case; that is, where there is any misrepresentation in his trademark or labels.' " If, at the time the partnership was dissolved, D. O. Mills had sold to his copartners the ranch and dairy, as well as his interest in the business of selling the milk there produced, the property in the trade name and the exclusive right to use it would have passed to the purchasers, and Mills could not have applied the name to another ranch

or dairy and used it in the like business to the injury of the plaintiff. By the division of the partnership property and business, coupled with the contracts for the sale of the same milk, the Greens acquired the right to use the trade name so long as they sold Millbrae milk; but they could not rightfully use it after they ceased to sell that milk, without wronging both Mills and the public. It does not aid the plaintiff's case that Marin county milk, which it now sells, is as good or even better than Millbrae milk. As was said in a similar case, "the privilege of deceiving the public, even for their own benefit, is not a legitimate subject of commerce": Prince Mfg. Co. v. Prince's Metallic Paint Co., 135 N. Y. 24, 17 L. R. A. 129, 31 N. E. 993. For a full discussion of the questions principally involved in the case at bar, see the case last above cited, and, also, Pepper v. Labrot, 8 Fed. 29, and Huwer v. Dannenhoffer, 82 N. Y. 499. In Atlantic Milling Co. v. Robinson, 20 Fed. 217, it was held that the right to the symbol is inseparable from the right to make and sell the commodity which it has been appropriated to designate. Pierce v. Guittard, 68 Cal. 68, 58 Am. Rep. 1, 8 Pac. 645, is entirely consistent with Joseph v. Macowsky, supra, and is against appellant.

It is claimed that the second finding is, in effect, that defendant Mills first used and adopted the name "Millbrae" before his partnership with A. F. Green, and that this is not justified by the evidence. Whether this name was adopted before or after is wholly immaterial. It had certainly been used many years before the dissolution, and was well known. It was the name of a locality, and attached thereto, no matter by whom nor when it was originated. Whether Millbrae farm is or is not shown by the evidence to be "peculiarly" fitted and adapted to the purpose of producing milk, or that it is not shown to produce better milk than other farms or dairies, is also immaterial. The name used to indicate milk produced on that farm had become valuable, and the question here is not one of comparison with other milk or other ranches, but whether defendant Mills shall be deprived of the use of a name that is valuable to him. The finding that "D. O. Mills never sold nor conveyed to A. F. Green and F. H. Green nor to either of them, the goodwill of the business of selling milk in the city of San Francisco," is, I think, supported by the evidence. The evidence shows that at the time of the dissolu-

tion of the copartnership four milk routes were operated. Those routes were not defined in the evidence. There was no agreement that Mills should not engage in that business in the city. Whatever might be said of the "routes" then operated, there is nothing in the evidence to indicate that he intended to exclude himself from the business of selling milk in the city, unless during the continuance of his contracts with his former partners. Besides, so far as the use of the trade name is concerned, the goodwill of the milk routes is an immaterial factor. It was found by the court that Green & Green "were to take from D. O. Mills all the milk which might be necessary to carry on the said business"; and this, it is said, is not justified by the evidence. The agreement, as we have seen, specified a minimum and maximum quantity, and, while they did not contract not to buy or sell other milk, and the evidence shows that they sometimes did so, yet the finding is substantially true. It was a division of the business, and during the continuance of these contracts they advertised no other milk, and there is no evidence tending to show that it was not usually sufficient to supply their customers. The finding that the use of the word "Millbrae" was a representation to the public that the milk sold was produced at Millbrae farm or dairy is incontrovertibly supported by the evidence, as is also the finding that the use of the same word by the plaintiff after it ceased to sell Millbrae milk was a false representation. The assurance given by plaintiff to its customers that it was selling them Marin county milk could not have been necessary if the use of the word "Millbrae" did not imply that it was selling milk from Millbrae dairy.

It was further alleged in the complaint that defendants Taylor and Mills entered into a scheme which had for its object the going into the business of selling milk in said city, and of obtaining customers by enticing away the customers of the plaintiff; that in pursuance thereof they induced the defendant Cole, who had been in the employment of the plaintiff and its predecessors for fifteen years, and had full knowledge of their milk routes, to leave the plaintiff and enter into their service, and were thus able to impose upon the customers of the plaintiff and sell them milk while such customers believed they were purchasing from plaintiff; that defendants' wagons closely resembled plaintiff's, and had painted on them

the words "Millbrae Dairy," and were run under the personal charge of defendant Cole, and by these means, and particularly by using the name "Millbrae," and having the same painted upon their wagons, and having them in charge of defendant Cole, have been drawing away plaintiff's customers, and allege damages in the sum of $500. Upon these issues the court found that no scheme was entered into; that none of plaintiff's customers were imposed upon, or bought milk from defendants when they supposed they were buying from plaintiff; that the wagons used by defendants do not resemble plaintiff's wagons; that none of plaintiff's customers have been drawn away, except by fair and open competition; that none of said customers were misled by the defendants' use of the trade name "Millbrae," and that plaintiff has not sustained any damage. Appellant claims that none of these findings are supported by the evidence. That defendants sold milk to a very considerable number of the former customers of plaintiff is not disputed. Whether defendants obtained these customers by improper means is a mixed question of law and fact; the means used being a question of fact, but whether such means were improper is a question of law, depending upon the relation of the parties, and their rights and duties toward each other. There is no doubt that plaintiff has sustained loss by the competition of defendants, but whether such loss is a legal injury, entitling the plaintiff to recover damages, is quite another question. The use of the trade name, so long used by plaintiff and its predecessors, must necessarily aid the defendants in securing custom, but, having the right to use it, plaintiff cannot complain. The circulars used by defendants for advertising their business were headed "Millbrae Dairy, of Millbrae, San Mateo County," and informed the people that they would sell their own milk, and further said, "Do not confound it with the Millbrae Company." We think these findings are fully justified by the evidence, notwithstanding the evidence shows that plaintiff suffered loss in consequence of what defendants did. Some of these findings, taken by themselves, are mixed conclusions of law and fact, and necessarily so. But they must be read in connection with the other findings, showing the relations of the parties and their rights and duties toward each other. Appellant contends that "a person who sells the goodwill of a busi-

46

ness will be enjoined from again setting up business at such a place and in such a manner as to destroy or diminish the business of which he had sold the goodwill; that the sole issue is between D. O. Mills, the vendor of the goodwill of a business, and appellant, successor to his vendees." We think that the only goodwill that was sold by Mills was the goodwill of the routes then operated for the sale of Millbrae milk; that it was not the intention of Mills to shut himself out from them, nor from any part of the city, if his vendees should cease to sell his milk. His vendees might have exacted other conditions, but they did not do so. In the language of F. H. Green, it was a "division of the business" theretofore carried on by the so-called vendor and vendees as partners, and that business was the sale of Millbrae milk. Mills did not sell the goodwill of the business of selling any other milk, as no other milk was sold, and his vendees could not divert the place where that business was conducted to the sale of a competing article, and shield themselves from his competition by claiming that the goodwill continued, not only as to the place, but as to the place used for selling a different and competing article. This conclusion makes it unnecessary to consider the cases cited by appellant in support of the proposition that the vendor of the goodwill of a business "must do nothing to impair or injure it" (a proposition which certainly requires material qualifications), or those other cases which undertake to specify with more or less particularity what the vendor who again enters upon a similar business may or may not do in furtherance of it.

I think the evidence justifies the findings and that the judgment and order appealed from should be affirmed.

We concur: Temple, C.; Searls, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.