# LEVY *v.* URI.

### TRADEMARKS; FALSE AND MISLEADING STATEMENTS.

1. The Patent Office should not recognize a property right in a mark, and grant it registration as a trademark, when the courts, upon the same facts, would decline to protect the mark if registered.
2. Where one of the parties to a trademark-interference proceeding bases its right to registration of the word "Brookwood," as a trademark for whiskey, upon prior use of the mark; and it appears that the applicant's labels containing the mark state that the whiskey is

a pure rye whiskey, while the evidence shows that it contains rye, bourbon whiskey and neutral spirits,—he is not entitled to register the mark, because of the false and misleading statements on the labels. (Citing *Schuster Co.* v. *Muller,* 28 App. D. C. 414.)

No. 486.   Patent Appeals.   Submitted March 20, 1908.   Decided June 2, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in a trademark-interference proceeding. *Reversed.*

The facts are stated in the opinion.

*Mr. A. P. Greeley* and *Mr. Francis B. James* for the appellants.

*Mr. Arthur E. Wallace* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is a trademark-interference case involving the word "Brookwood" as a trademark for whiskey.

It is established that appellee's predecessor was the first to adopt and use the mark, and that the mark has been continuously used since its original adoption. It is contended, however, that, owing to material misrepresentations printed on the labels containing this mark, appellee is not entitled to its registration. A label containing the words:

PURE OLD
D
O
O
W
K
O
O
R
B
RYE   WHISKEY

—was placed on bottled goods by appellee; and a label containing the words:

| BROOKWOOD | |
|---|---|
| | Distilled |
| | From |
| PURE | Selected Grain |
| | And Is |
| | Absolutely |
| | Pure |
| OLD RYE | |
| WHISKEY | |

—was furnished dealers to whom sales in bulk were made, for use in bottling "Brookwood" whiskey. The evidence shows that these labels were extensively used from about 1893, soon after the adoption of the word "Brookwood" as a trademark, down to the time when the so-called pure food law went into operation, when the words "A Blend" were added. It clearly appears that the whiskey sold as "Pure Old Brookwood Rye Whiskey" and "Brookwood Pure Old Rye Whiskey" contained a certain proportion of Pennsylvania rye whiskey, a certain proportion of Kentucky rye whiskey, three different brands of Kentucky bourbon, a certain proportion of neutral spirits, some prune juice, bede oil, and caramel. It also clearly appears that the statement "Distilled from Selected Grain" was made without regard to its accuracy.

It is established by a long line of authorities that, in an equitable proceeding to restrain the fraudulent use of a trademark, the one seeking such relief must himself be guiltless of any false representations in the mark and in advertising the article covered by the mark; and that, if he has made such false representations, the right to the exclusive use of the mark cannot be maintained. In *Worden & Co.* v. *California Fig Syrup Co.* 187 U. S. 528, 47 L. ed. 288, 23 Sup. Ct. Rep. 161, Mr. Justice Shiras, speaking for the court, said: "When

the owner of a trademark applies for an injunction to restrain the defendant from injuring his property by making false representations to the public, it is essential that the plaintiff should not, in his trademark, or in his advertisements and business, be himself guilty of any false or misleading representation; that, if the plaintiff makes any material false statement in connection with the property which he seeks to protect, he loses his right to claim the assistance of a court of equity; that, where any symbol or label claimed as a trademark is so constructed or worded as to claim or contain a distinct assertion which is false, no property can be claimed on it, or, in other words, the right to the exclusive use of it cannot be maintained." To the same effect are: *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218, 27 L. ed. 706, 2 Sup. Ct. Rep. 436; *Holzapfel's Composition Co.* v. *Rahtjen's American Composition Co.* 183 U. S. 1, 46 L. ed. 49, 22 Sup. Ct. Rep. 6; *Ginter* v. *Kinney Tobacco Co.* 12 Fed. 782; *Krauss* v. *Jos. R. Peebles' Sons Co.* 58 Fed. 585; *Hilson Co.* v. *Foster,* 80 Fed. 896; *Uri* v. *Hirsch,* 123 Fed. 568; *Memphis Keeley Institute* v. *Leslie R. Keeley Co.* 155 Fed. 964; *Prince Mfg. Co.* v. *Prince's Metallic Paint Co.* 135 N. Y. 24, 17 L.R.A. 129, 31 N. E. 990; *Joseph* v. *Macowsky,* 96 Cal. 518, 19 L.R.A. 53, 31 Pac. 914; *Palmer* v. *Harris,* 60 Pa. 156, 100 Am. Dec. 557; *Laird* v. *Wilder,* 9 Bush, 131, 15 Am. Rep. 707; *Solis Cigar Co.* v. *Pozo,* 16 Colo. 388, 25 Am. St. Rep. 279, 26 Pac. 556; *Estcourt* v. *Estcourt Hop Essence Co.* L. R. 10 Ch. 276.

Under the rule announced in these cases, it is clear that appellee would not be entitled to invoke the assistance of a court of equity in attempting to maintain the exclusive use of this trademark. In other words, a court of equity, in the circumstances of the case, would recognize no property right in the mark. For many years the public has been led to believe that the whiskey sold under this mark was a pure old rye whiskey, when in truth and in fact it was very far from being such a whiskey.

It may be, as contended by counsel for appellee, that a similar mixture, containing more than 50 per cent of real

rye whiskey, is rye whiskey for the purpose of internal-revenue assessment; but the acceptance of such a mixture as pure old rye whiskey, or pure rye whiskey, would impose altogether too great a tax upon our credulity.

The Century Dictionary tells us that a thing is pure when it is "free from extraneous matter; separate from matter of another kind; free from mixture, unmixed." It is well known that a pure rye whiskey is exactly what the term imports,— a whiskey made solely from malted rye. Such a whiskey has all the congeneric properties of the grain from which it derives its name, and in the mind of the consumer is associated with that particular grain and no other. When we speak of Scotch whiskey we do not mean whiskey made from corn, but from malted barley. So, too, it is well understood that Bourbon whiskey is a Kentucky product made principally out of corn, with sufficient rye and barley malt added to distinguish it from straight corn whiskey. Each kind of whiskey mentioned has its own peculiar flavor and character, and is sought after as a beverage because of that flavor and character. Neutral spirits, on the contrary, as the term suggests, is a colorless liquid, has neither flavor nor character, and is not a beverage at all. It may be produced from any fermented substance, such as corn, potatoes, and sugar beets. Formerly it was used exclusively in the arts, but with the advent of cheaper methods of production it has been palmed off on the public as a beverage by mixing it with something to give it flavor and character. Since it costs far less to produce than rye whiskey, it is apparent that its use by the distiller increases his profits in proportion as the public is deceived.

Appellee admits the use of neutral spirits in the mixture sold as "Pure Old Rye Whiskey," but does not state the proportion used. In view of this admission, however, it is safe to assume that a substantial proportion was used. We do not think a mixture of spirits and rye whiskey a pure rye whiskey, and we do not believe the public would so regard it. As before stated, neutral spirits is not a beverage, has none of the distinguishing characteristics of rye whiskey, and is,

therefore, "matter of another kind." We think it very clear that to advertise and sell a mixture containing rye and Bourbon whiskeys and neutral spirits, whether containing flavoring and coloring matter or not, as a pure rye whiskey, is grossly to deceive the public. It follows that, sitting as a court of equity, we would not recognize any property right in this mark.

The question for determination, therefore, is whether the Patent Office should recognize a property right in a mark and accord it registration when the courts, upon the same facts, would decline to protect the mark when registered. The act under which registration is sought requires a verified declaration by the applicant that to the best of his belief no one else has the right to use the mark. The act also provides that the registration of the mark shall be prima facie evidence of ownership. It further provides that no action shall be maintained under the provisions of the act "in any case when the trademark * * * has been used with a design of deceiving the public in the purchase of merchandise." In this case the record conclusively shows that the applicant, Uri & Company, was not entitled to the exclusive use of the mark because of the misleading and deceptive statements contained on their labels. It was the purpose of the act to protect honest manufacturers and dealers because in so doing the public would in turn be protected. It was not the purpose of the act to recognize the right of any person, firm, or corporation to deceive the public by the use of a deceptive mark. In other words, the government will not become a party to a fraud. *Schuster Co.* v. *Muller,* 28 App. D. C. 414.

It is our conclusion that, because of the misleading statements on the labels containing the mark, appellee can claim no property right therein, and is not entitled to claim the benefits of the trademark act.

The decision of the Commissioner of Patents is reversed, and the clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, in accordance with law.                    *Reversed.*