# CIRCUIT COURT OF BALTIMORE CITY.

Filed January 28, 1926.

THE TAXI-CAB COMPANY
VS.
ROBERT C. MUNDON.

*W. Howard Hamilton* and *Joseph C. France* for complainant.

*Daniel C. Joseph* for defendant.

FRANK, J.—

The plaintiff was organized in January, 1909, to operate taxi-cabs for hire in Baltimore City and vicinity. It started with five or six cabs of no special color or design. Shortly thereafter it adopted brown as the color of

its cabs which came to be known as "brown cabs." In November, 1919, it adopted a yellow color for the body of its cabs, the cowl, radiator, fenders, top, etc, being painted black and a black border being painted around the edges of the doors. Prior to this time there had never been in Baltimore City any cabs painted yellow. At this time, the plaintiff had fifty such cabs in its service. From then, until the present time, all of its cabs have been painted in the same distinctive manner. It has spent large sums of money aggregat·ing over $83,000 in advertising its business, the advertising matter featuring the yellow color and name of the cabs and from 1919, it adopted for itself the trade names of "Yellow Cab Company," using this name in its advertisements and being generally known, and having been frequently sued in the Courts, as the "Yellow Cab Company."

It chose and trained its drivers with care and built up a reputation for careful and responsible service. At this time, its fleet of cabs numbers 170, its employees number 397 and it furnishes twenty-four hour continuous service. It has contracts for exclusive service with most of the principal railroad companies, steamboat lines, hotels and clubs in Baltimore City. Besides stands and telephone booths at many of these, it maintains over thirty other stands in various parts of the City, in addition to its main office and garage on Cathedral street and a branch garage on East 25th street.

In 1925, the plaintiff carried over 1,600,000 passengers. Its cabs ran over 3,600,000 metered miles. Its gross income was in excess of $873,000 and its gross assets on December 1, 1925, were $620,000.

Although since 1919 it used the name "Yellow Cab Company" in its business, its corporate name, "The Taxi-Cab Company," remained unchanged, until, by amendment of its charter in December, 1925, it became the "Yellow Cab Company." The trade name "Yellow Cab Company" was not registered in the Superior Court of Baltimore City pursuant to the Act of 1922, ch. 381 (Code 1924, Art. 2, Sec. 18-20).

The defendant. Mundon, bought the taxi-cab involved in this case in 1925. It was a Dodge car, had been the property of the New Taxi-Cab Company and had been painted blue. He caused it to be repainted, the body an orange chrome yellow, the rest an extremely deep blue black, hardly distinguishable from black. When so repainted, he operated the cab in Baltimore City. Though differing in details from the cabs of the plaintiff its general appearance is strikingly similar. Not only was it likely to be mistaken for one of plaintiff's cabs, but there is testimony of a number of witnesses that it was by them actually so mistaken.

The differences between the plaintiff's and defendant's cabs are as follows:

1. The yellow on plaintiff's cabs is slightly lighter in shade than in defendant's.

2. Plaintiff's cabs have black trimmings. Those of defendant's cab are deep blue black hardly to be distinguished from black.

3. Disc wheels on plaintiff's cabs are painted yellow; on defendant's, light blue.

4. Plaintiff's cabs have an emblem painted on their doors and black numbers on the sides and back. Defendant's has none of these.

5. Plaintiff's cabs carry vacant signs, have a light in the meter; defendant's cab has neither.

6. Plaintiff's cabs have cowl lights; defendant's has standard head-lights.

7. Plaintiff's drivers wear uniforms and a yellow band in their caps. Defendant's drivers wear no uniform but sometimes wear taxi-cab caps.

In spite of these differences, the general appearance of plaintiff's and defendant's cabs is strikingly similar and defendant's cab has, as shown by the evidence, on several occasions in the regular course of business been mistaken and hired for and as one of plaintiff's cabs.

The question here is one of alleged unfair competition and must be decided upon principles which have now become familiar. No one is permitted by imitation or unfair device to induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise.

26 R. C. L. 875, Sec. 53.

The plaintiff must show a property right in itself and a fraudulent or colorable imitation by the defendant.

Robertson vs. Berry, 50 Md. 591, 596.

442

While it is true that no one can have any exclusive property right in a color or combination of colors, nevertheless where the color or combination has become associated in the minds of the public with the products or appliances of the plaintiff and thereby acquired a "secondary meaning," his competitor by the use of similar color devices will not be permitted to secure for himself the value of the reputation of the plaintiff. One has no more right to pass off his place of business as another's, than he has to pass off his own goods as those of another. Where, as in the case of a taxi-cab company, its business reputation is bound up with the vehicles used by it in the prosecution of its business, an imitation of the physical characteristics of those vehicles will be governed by the same principles.

Nims on Unfair Competition & Trademarks (2d Ed. 1917) pp. 257 and 258; 17 A. L. R. 787 Note; 28 A. L. R. 114 Note; 28 Cyc. 826, Sec. 7.

In the present case, it is true that defendant's cab differs from the plaintiff's in the particulars above enumerated. If the two were placed side by side, these differences might be noticeable. Where not so situated, the differences could be perceived only by a careful and attentive observation. The true test of unfair competition is whether the resemblance is such as is calculated to deceive the ordinary customer situated under the ordinary conditions which prevail in the business. Ordinary customers include the incautious, unwary or ignorant customer, but not careless customers who make no examination at all.

38 Cyc. 776.

The testimony in this case shows not merely that the dress of defendant's cab is calculated to deceive but that it actually has deceived not only one but several customers and several other persons, including a competitor in the cab business. "Such demonstration of fact is worth any amount of hypothesis." "If one case of actual deception is proved, there is no more to be said on either side. The case is at an end. Argument only takes place where there is no proved case of actual deception."

Note 16 in 38 Cyc. 776.

I am of the opinion that the case made out by the plaintiff's and the defendant's testimony establishes the unfair competition of the defendant and

entitles the plaintiff to injunctive relief therefrom, unless some one or more of the defenses suggested and urged by the defendant may disentitle the plaintiff to relief at the hands of a court of equity. Let us take these up in the order in which they have been presented.

1. The plaintiff's correct corporate name until December, 1925, was "The Taxi-Cab Company." At that time, by amendment to its charter, its name became "The Yellow Cab Company." Since November, 1919, when it adopted the yellow color for its cabs, it has also used as a trade name the title "Yellow Cab Company." It owned the charter of a corporation known as the "Yellow Cab Company" and had owned it for a good many years. It did not register this name prior to July 1, 1922, as specified in the Act of 1922, Chapter 381. This situation is claimed to amount to such fraudulent conduct as to bar it from the relief sought in this case.

(a) The Act of 1922 by its terms applies only to "any person or persons engaged in any mercantile, trading or manufacturing business as an agent or agents, or doing business in any name or under any title or designation other than his or their own names." This language, together with that in the form of certificate directed to be filed, is apparently appropriate only to natural persons and not to corporations and then only to such as are engaged in any "mercantile, trading or manufacturing business." It is true that Section 15, of Article 1, of the Code provides that the "word person shall include corporation unless such construction would be unreasonable." but Section 20, of the Act of 1922, expressly contracts the "person or persons, so conducting any such business, as agent or agents, in any name or under any title or designation other than in the real name or names of the true owner or owners thereof," with "any *person*, or *corporation* who shall become a creditor of such person or persons." (Italics mine). The legislature clearly indicated its intention to limit the persons subject to the provisions of the Act to natural persons.

Moreover, it is doubtful if the business of operating cabs is embraced in the category of "mercantile, trading or manufacturing business," and even if it is the only penalty for failing to file the prescribed certificate is that the credi-

tor shall have the right to such person or persons either in his or their own name or in the name, title, or designation under which said business is being conducted and may seize and sell under judgment all property, &c., used in said business." (Code, Art. 2, Sec. 20).

I do not think that this Act is applicable to the plaintiff, but assuming that it is, the full consequences of a failure to comply with it seem embodied in the provisions of Sec. 20 just summarized.

(b) Can all of the aforegoing circumstances amount to such fraudulent representation as to prevent the plaintiff from coming into court with clean hands? The defendant relies on Siegert vs. Abbott, 61 Md. 276, Kenny vs. Gillett, 70 Md. 574, and Houchens vs. Houchens, 95 Md. 37.

In Siegert vs. Abbott, the fraudulent representation was found in a label stating that the deceased inventor and original manufacturer of a patent medicine had moved the place of manufacture to a new place where he still lived and personally continued the manufacture. In Kenny v. Gillett, 70 Md. 574, the representation was that plaintiff's tea which actually was compounded of several varieties in Baltimore, was the "kind the Chinese drink." This the Court held could only mean that as sold, it had been imported from China. In Houchens vs. Houchens, 95 Md. 37, the label on a bottle of the alleged medicine stated that it is "The great small pox cure" and "cures the worst cases without marking." The statements were false.

In each of these cases, the misrepresentation involved was material as to the quality or origin of the product involved. All of these products were compounded according to a formula not revealed and the confidence of the buyer arose out of the source from which they came or their qualities or the results promised. In the case at bar, the public could in no manner be prejudiced by the use of a name which correctly and accurately described the cab of the plaintiff and in no manner could mislead any one as to its quality. No one could have dealt with the plaintiff on the theory that it was any more efficient and responsible under the name of the "Yellow Cab Company" than it actually was under its real name of "The Taxi-Cab Company."

I am not unmindful of the decisions of the Court of Appeals in Sisters of Notre Dame vs. Kusnitt, 125 Md. 323, and Fifer vs. Clearfield Coal Co., 103 Md. 1. Both of these were contract cases and their determination depended upon the fact that the party defrauded was shown to have specifically relied on the representation that he was dealing with a corporation and not with an individual and this representation was held to be of the essence of the contract. They do not, therefore, apply to the case under consideration.

2. Defendant produced as a witness, Schachne Isaacs, associate in psychology at Johns Hopkins University, who qualified as an expert in experimental and applied psychology referred to visional problems, vision he said being one of the most important topics in experimental psychology. He testified that yellow and blue have a greater field of vision than have the other two primary colors, red and green; that yellow has a decided advantage in that it reflects from 50 to 60 or even 70 per cent. of the light which falls upon it whereas blue will reflect usually considerably less, perhaps 10 per cent. of the amount of light falling upon it. His conclusion is that "a pedestrian stepping off a sidewalk would much more quickly, should more certainly catch the color, catch the approaching machine if it was a machine painted yellow approaching from the side at any angle and from a greater distance than he would I should say to any other color."

From this the conclusion is sought to be drawn that the yellow color has a functional value in that its use enhances the safety of the operation of the vehicle so colored. This suggestion is, so far as I am aware, a novel one and has not been heretofore advanced in any of the numerous yellow taxicab cases to which I have been referred, most of which are cited in the notes in 17 A. L. R. and 28 A. L. R. above referred to. The principle involved was admirably stated by Judge Townsend in Marcel Co. vs. Pearl (C. C. A. 2d Circuit, 1904), 133 Fed. 160: "In the absence of protection by patent, no person can monopolize or appropriate to the exclusion of others elements of mechanical construction which are essential to the successful practical operation of a manufacture, or which primarily serve to promote its efficiency for the purpose to which it

is devoted. Unfair competition is not established by proof of similarity in form, dimensions or general appearance alone. Where such similarity consists in constructon common to or characteristic of the articles in question, and especially where it appears to result from an effort to comply with the physical requirements essential to commercial success and not to be designed to misrepresent the origin of such articles, the doctrine of unfair competition cannot be successfully invoked to abridge the freedom of trade competition."

See also Judge Learned Hand's statement in Shredded Wheat Co. vs. Humphrey Cornell Co. (C. C. A. 2d Cir. 1918), 250 Fed. 960.

Defendant stated his reasons for changing the color of his cab from blue to yellow as follows: "Well, I was looking for a color, something that would be distinct—you know chauffeurs, the majority of them are the average make a little speed at times, and especially at night, and I was looking for a color that probably could be seen, something that would last, durable, something that when they would wash would look more presentable to the public."

The question of the good faith of the defendant in painting his cab to resemble those of the plaintiff is pertinent. If he had intended to secure the highest degree of visibility, that could have been accomplished by painting yellow his entire cab instead of approximately half thereof. Indeed, the fronts of both plaintiff's and defendant's cabs are painted a dark color and approaching directly from the front only a narrow band of yellow just below the windshield can be seen. The new cars of the United Railways and Electric Company are being painted a solid yellow color and if the securing of a high degree of visibility is desired, that purpose is accomplished. Had the defendant painted his cab a solid yellow color or had be painted the body thereof a dark color and the remaining portions, including the whole front and top, yellow, he would have been entitled to more consideration in his contention that his purpose was, not to secure the business of the plaintiff, but to enhance the visibility of his cab and, therefore, the safety of its operation.

It will be noted that the testimony of the expert involved only a comparison of the four primary colors, that it related only to the color yellow and not to its combination with another color or other colors, nor was he asked as to the proper location of the color on the cab. Certainly, with the feasibility of the use of yellow either solidly or in different places or combinations on the cab, it cannot be fairly contended that its sole functional value consists in its use in substantially the same way in which the plaintiff has so long and so successfully used it. It is only where the "secondary meaning" is bound up in the elements of the appearance which cannot be changed without cutting off defendant's substantial right to use that kind of cab that the plaintiff must suffer the resulting confusion.

Shredded Wheat Co. vs. Humphrey Cornell Co., supra, p. 964.

The conclusion is thus reached that defendant's appropriation of plaintiff's combination of colors cannot be upheld as a functional necessity, and this without reference to the facts that the great mass of motor vehicles are safely operated without having any trace of yellow color upon them and that at night safety of operation can be secured only by the use of lights with but little regard to color.

I am thus of the opinion that the plaintiff is entitled to be protected from the unfair competition of the defendant due to his painting his cab in such a way as to tend to mislead the public into believing his cab to be one of the plaintiff's cabs and will sign a decree accordingly.