LEMKE, Respondent, vs. DIETZ, imp., Appellant.

*February 29—March 22, 1904.*

*Tradenames: Proprietary medicines: Imitations: Deception of public: Equitable relief.*

Where the reputation of a proprietary medicine was partly due to the long experience and great care of a physician who manufactured it for many years, the use, after his death, by a subsequent manufacturer, of labels bearing such physician's name in a way to indicate that he was still living and, if not himself preparing the medicine, was at least superintending its manufacture, is *held* such a deception of the public that a court of equity will not lend its aid to protect the manufacturer from infringements or imitations of his tradenames or labels.

APPEAL from an order of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

This is an action in equity to enjoin the infringement of alleged trademarks and to prevent unfair competition in trade. The defendant *Dietz* demurred generally to the complaint, and appeals from an order overruling the demurrer.

The complaint states, in substance, that on and for many years before May 1, 1883, the defendant F. A. Sabine and one A. J. Lemke were partners in business under the name of the F. A. Sabine Medicine Company, and were manufacturing numerous medicinal compounds under formulæ owned by them, and were selling the same in many states in packages and bottles under the general name and trademark of the Sabine medicines, among which compounds were "Sabine's World's Relief" and "Sabine's World's Relief No. 2," together with thirteen other remedies, not necessary to be specifically named here, but each having a name in which the word "Sabine" or "Dr. Sabine" occupies the chief place (e. g., "Sabine's Blackberry Soothing Drops," "Dr. F. A. Sabine's Bone Liniment"); that the packages and bottles in which all these compounds have been and now are sold have always borne the said names and trademarks as their chief distinguishing mark, and long prior to May 1, 1883, had acquired a high reputation as valuable medicinal specifics, under the name of Sabine medicines, and the name "Sabine" had thus acquired a peculiar and distinctive value in connection with said medicines; that on May 1, 1883, in consideration of $4,000 paid by Lemke to Sabine, said Sabine sold, assigned, and set over to said Lemke all his right and interest in said business, and in said compounds and formulæ, trademarks, and names, and the right to use the same, and covenanted and agreed not to manufacture or sell the same, or any other compound bearing the name of the Sabine medicines, or to use said trademarks or names within the United States, or to use the name of Sabine in connection

with similar or like compounds, or to allow others so to do; that from and after May 1, 1883, said A. J. Lemke continued to manufacture and sell said medicines under said names and trademarks, and to carry on the business theretofore conducted by said partnership, until December, 1893, when said Lemke died at Milwaukee, and that, by virtue of probate proceedings duly had, the plaintiff thereafter became, by virtue of the will of said deceased and the assignment of the probate court, the lawful owner of said business and all its good will, rights, trademarks, and formulæ aforesaid, and the plaintiff has continued since the death of said A. J. Lemke to carry on said business, and now does carry on the same; that by reason of the long experience and the care of said A. J. Lemke and the plaintiff in the said business, and the good quality of the said compounds, the same have acquired a high reputation and extensive sale in the United States, and are a source of great profit, and are known to the public by the aforementioned tradenames, trademarks, and devices; that the defendant Sabine, after said sale to said Lemke and down to the present time, has wrongfully prepared and sold at Milwaukee and elsewhere imitations of plaintiff's said compounds put up in similar packages and bottles, with similar labels and trademarks; that the compounds called "World's Relief" and "World's Relief No. 2" are in the greatest demand of any of said medicines; that they have always been, and are now, sold in glass bottles, with wrappers and labels, of which copies are attached to the complaint.

(These wrappers contain on the front the words "Sabine's World's Relief," displayed upon the representation of a globe, under this device being the following legend: "Sabine's World's Relief No. 2. For pain in the stomach, cholera, cholera morbus, colic, cramps and diarrhœa. It is an instant cure for pain. Internal remedy. Price 25 cents. Dr. A. J. Lemke, Milwaukee, Wis." On one side of the pack-

age is the following legend: "Sabine's World's Relief No. 2. Observe the name, Dr. A. J. Lemke, without which none is genuine." Upon the other side is the following legend in the German language: "Sabine's World's Relief No. 2. Cures pain in the stomach, cholera morbus, cholera, colic, cramps and diarrhœa. Internal remedy. Price 25 cents. Dr. A. J. Lemke, Milwaukee, Wis." Smaller labels apparently placed upon the bottles contained directions in both German and English for the use of the medicine, with the following caution at the bottom: "None genuine unless the name Dr. A. J. Lemke is on the label. Dr. A. J. Lemke.")

The complaint further alleges that the defendant Sabine is offering for sale and selling in Milwaukee and elsewhere an imitation of the said World's Relief No. 2 in similar bottles, and inclosed in wrappers bearing similar labels to those used by the plaintiff, copies of which wrappers and labels are attached to the complaint (these last-mentioned wrappers and labels are close imitations, in style and type, of the plaintiff's wrappers and labels, and almost identical in verbiage, save that they omit the name "Lemke," and insert at the bottom the name "Dr. William A. Sabine Medicine Company, Buffalo, N. Y., and Milwaukee, Wis."); that said imitations are calculated to deceive purchasers, and actually have misled and still do mislead many to buy the same, believing that they are buying the genuine articles manufactured by the plaintiff, whereby the plaintiff's business and her profits have been greatly diminished; that the said imitations are of greatly inferior quality, and do not possess the medicinal qualities possessed by the plaintiff's articles; that by reason thereof the reputation of the plaintiff's articles and her business and profits have been greatly injured; that the defendant *Dietz* is the owner of a drug store in Milwaukee, and has associated himself with the defendant Sabine for the purpose of turning out, without license, imitations of the aforesaid medicines, with full knowl-

edge of the premises, and in wilful disregard of the plaint-
iff's rights; that the defendant Sabine has been financially
poor, and that *Dietz* is financially well off, and has furnished
Sabine with means to conduct the said business, and that
since *Dietz's* connection with Sabine, and especially since
the beginning of the year 1903, the defendants *Dietz* and
Sabine have made such efforts and employed such means as
will utterly and totally destroy the plaintiff's business, unless
relief is granted; that by reason of the premises the plaintiff
has been injured in the sum of $10,000; and that she has
no adequate remedy at law.   Judgment is demanded that the
defendants be enjoined from selling or offering for sale any
imitations of the plaintiff's compounds, or any compound
bearing the aforementioned names or trademarks, or imita-
tions thereof, or imitations of the plaintiff's labels; also that
the defendants account for profits; and that the plaintiff have
judgment for damages.

For the appellant there was a brief by *N. B. Neelen &
F. W. Houghton,* and oral argument by *Mr. Houghton.*

*Otto A. Lemke,* for the respondent.

WINSLOW, J.   We shall assume, for the purposes of this
opinion, that the genuine "Sabine's World's Relief No. 2"
possesses all the medicinal virtues attributed to it by the
complaint and the labels; that it is an instant cure for pain,
as the label assures us; and that upon its introduction, in ap-
propriate doses, into the human system, pain in the stomach,
cholera, cholera morbus, colic, cramps, and similar ailments
flee away.   Such a remedy is surely entitled to the name
"World's Relief," though why it should be called "World's
Relief No. 2" is difficult to understand.   One feels a long-
ing to know what greater feats of healing are accomplished
by "World's Relief No. 1," when so inestimable a medical
blessing is called "No. 2; " but upon this point the complaint

throws no light, and we seem destined to remain in igno--
rance, unless, indeed, we join those vast throngs which we
are bound to believe are hurrying to the drug stores of the
land to purchase the Sabine medicines, and, by the expen-
diture of a quarter of a dollar, learn what greater miracles in
therapeutics are accomplished by the "World's Relief No. 1."

As said in the beginning, however, we assume that the
medicinal compound which it is claimed has been imitated:
and counterfeited possesses substantially the merits claimed
for it.   Courts have sometimes refused to intervene on be--
half of the owners of a proprietary medicine on the ground:
of the falsity of the claims made as to its healing quality, but
this has always been after trial, when the falsity had been
proven by sufficient evidence, and not upon demurrer.

The complaint, when fairly and reasonably construed,
shows that the plaintiff is the owner of the right to manu-
facture the medicine and use the tradenames and labels in
question, save, perhaps, for one feature hereafter noticed,
and that those rights are valuable rights.   We think it also
appears from the complaint that both defendants have placed
in the market imitations of said medicine, with wrappers and
labels well calculated to deceive, and which in fact do de-
ceive, the public, and have thereby injured the plaintiff's-
reputation and business.   From these facts, irrespective en-
tirely of the question of trademark, which we do not decide,
we think it clear that a case of unfair competition in busi-
ness by the imitation of packages and labels is alleged, except
for one consideration, now to be stated.

The principle is settled that a substantial lack of truth
in a trademark or trade-label debars it from protection at the
hands of a court of equity.   There may be no way of stopping:
the deception which the plaintiff is practicing on the public,
but a court of equity will not lend its aid to give the plaintiff
a monopoly in such deception.   This is simply an applica-

tion of familiar principles, which are nowhere better stated, perhaps, than by Vice Chancellor SHADWELL in the old case of *Pidding v. How,* 8 Simons, 477, thus:

"It is a clear rule laid down by courts of equity not to extend their protection to persons whose case is not founded in truth."

This rule has been most frequently applied in cases where it has appeared by the evidence that the trademark or label contains false statements as to the qualities or ingredients of the merchandise. Browne, Trademarks (2d ed.) § 71. The rule, however, is by no means confined to misrepresentations of this description. It extends as well to false statements as to the identity of the manufacturer. *Manhattan Medicine Co. v. Wood,* 108 U. S. 218, 2 Sup. Ct. 436; *Siegert v. Abbott,* 61 Md. 276; *Pidding v. How, supra; Joseph v. Macowsky,* 96 Cal. 518, 31 Pac. 914, 19 L. R. A. 53; *Alaska Packers' Asso. v. Alaska Imp. Co.* 60 Fed. 103. This last-named case is instructive on this point. It was a suit in equity for infringement of a trademark. The plaintiff was the assignee of the Aleutian Islands Fishing & Mining Company, which had established a station for canning salmon on the island of Kodiak, Alaska. The complaint alleged that this last-named company had used only the best quality of salmon, and exercised great care and skill in packing, so that it acquired a very high reputation, and built up a very large business, and used a certain described trademark or brand upon its cans by which said salmon were known, and that said company leased its properties to the plaintiff, and assigned to the plaintiff the good will of the business, its labels, brands, and trademarks, and that the defendant was imitating the said trademark or brand. The label contained the statement that the salmon was packed "by the Aleutian Islands Fishing & Mining Co.," which was entirely false, and for this reason it was held that the plaintiff was not entitled to relief in equity. In that case it was admitted by plaintiff's counsel,

and we think advisedly, that in a case where the reputation and value of an article is due to some peculiar, personal, individual skill or genius of the original manufacturer, an assignee of the business should state the fact that he is the assignee in his labels, and cannot rightfully represent to the public that the article is still made by the original manufacturer; but he claimed that the principle did not apply to an ordinary article of manufacture, such as canned salmon. The court, however, held that the principle did apply to the case, because the complaint alleged that the care, skill, and expertness of the original manufacturer had given the salmon its high reputation. A *fortiori* should the rule apply to a. medicinal compound like the World's Relief No. 2. It claims for itself great virtues. Naturally, the citizen afflicted with cholera or doubled up with colic will ask, as he inspects the bottle on the druggist's counter: "Who makes it? What assurance have I that it will do what the label says?" And turning to the label, he will find there the name of Dr. A. J. Lemke, Milwaukee, Wis. True, the label does not say categorically that Dr. A. J. Lemke manufactures it, but that is the natural and almost inevitable inference to be drawn from the various labels. This information is quite reassuring to the sufferer. We all know how we trust the physician's word in sickness, and, when we find a patent medicine which purports to be prepared by a physician, the inclination to regard it as necessarily superior to a preparation put forth by a layman is well known. The fact is, in a certain degree,. a guaranty that the medicine has some merit. In the present case the complaint alleges that the long experience and great care of Albert J. Lemke had contributed to the reputation of the medicine, but that Albert J. Lemke died in December, 1893, since which time the plaintiff, as his legatee, has carried on the busines and made the medicine, and has sent it forth on its healing and soothing mission with the false assurance on every bottle that Albert J. Lemke was still.

living at Milwaukee and was actively superintending the manufacture, if not preparing it in person. We can but regard this as a substantial false statement of a very material fact. If it was desired to assure the public that this was the same medicine prepared by Dr. A. J. Lemke, and after his formula, those facts could have been easily stated, and there would have been no deception. Our statute recognizes that proprietary medicines should only be prepared by a physician or registered pharmacist, by permitting their sale in sealed packages on which are printed the name of the contents, the directions for using, and *the name of the physician or pharmacist* by whom prepared, and apparently does not permit the general sale of any proprietary medicines compounded within this state which do not comply with these requirements. Sec. 1409*g*, Stats. 1898.

For the reasons stated, the demurrer to the complaint should have been sustained.

*By the Court.*—Order reversed, and action remanded with directions to sustain the demurrer.